REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   Michael K. Brown (SBN 104252)
    Email:    mkbrown@reedsmith.com
2   REED SMITH LLP
    355 South Grand Avenue
3   Suite 2900
    Los Angeles, CA 90071-1514
4   Telephone: +1 213 457 8000
    Facsimile: +1 213 457 8080
5
    Sonja S. Weissman (SBN 154320)
6   Email:    sweissman@reedsmith.com
    Steven J. Boranian (SBN 174183)
7   Email:    sboranian@reedsmith.com
    REED SMITH LLP
8   101 Second Street
    Suite 1800
9   San Francisco, CA 94105-3659
    Telephone: +1 415 543 8700
10  Facsimile: +1 415 391 8269

11  Attorneys for Defendant
    GlaxoSmithKline LLC (formerly known as
12  SmithKline Beecham Corporation d/b/a
    GlaxoSmithKline)

13

14              UNITED STATES DISTRICT COURT

15              NORTHERN DISTRICT OF CALIFORNIA

16  LINDA DUDLEY, ALESIA DIGGS, DARLENE          Case No.:
    BRACEY, JOE BRADFORD, ALLAN BRADY,
17  BILLY BROWN. DAVID BROWN, ANTHONY            **CV 13 3168**
    BYRD, VICKIE CAGLE, NICHOLAS                 [Removal from Superior Court of California,
18  COLEMAN, PEGGY CONSTANCE,                    San Francisco County – Case No. CGC-13-
    SUZANNE COOPER, WILLIAM CRENSHAW,            532443]
19  SHIRLEY CRUM, CARMEN CRUZ,
    TIMOTHY DAVIS, DELORES                       **NOTICE OF REMOVAL BY DEFENDANT**
20  DEGRAFFENRIED, ARTHURENE EUBANKS,            **GLAXOSMITHKLINE LLC UNDER 28**
    RON EVANS, DANNY FARRINGTON,                 **U.S.C.§§ 1332 AND 1441(B)**
21  JACQUELINE FOSTER, KINNEY FULLER,
    MICHAEL GAMAREL, GWENDOLYN                   [Filed concurrently with Civil Cover Sheet,
22  GEIGER, MARK GEORGE, ABELL GORE,             Corporate Disclosure Statement, Notice of
    HAROLD GREEN. TERESA GRIFFIN, WILLIE         Pendency of Other Actions or Proceedings,
23  GRIGGS, WILLIAM HALL, CHARLENE               Demand for Jury Trial, and Certification of
    HOWARD, CHRISTOPHER INGRAM, JESSIE           Interested Persons]
24  JENKINS, JIMMY JIMENEZ, DELMAR
    JONES, LARRY LECHAN, JAMES
25  LONGWELL, FRANCIS LONO, TOWADA
    LUNDY, BARBARA MARSH, ALINDA
26  MCCULLUM, AARON MCFADDEN,
    SUZANNE MCPHEARSON, LINDA MILSTID,
27  JEFFREY MIREK, JOHN MITCHELL, JOAN
    MOORE, and URI NEUMAN,

28

ORIGINAL
FILED

JUL 09 2013

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT.
NORTHERN DISTRICT OF CALIFORNIA

EDL

---

NOTICE OF REMOVAL BY DEFENDANT GLAXOSMITHKLINE LLC UNDER 28 U.S.C. §§ 1332 AND 1441(B)
US_ACTIVE-113615460.1

Plaintiffs,

vs.

McKESSON CORPORATION, a corporation,
SMITHKLINE BEECHAM CORPORATION
d/b/a GLAXOSMITHKLINE, and DOES 1
THROUGH 100, Inclusive,

Defendants.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NOTICE OF REMOVAL BY DEFENDANT GLAXOSMITHKLINE LLC UNDER 28 U.S.C. §§ 1332 AND 1441(B)

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA:**

**PLEASE TAKE NOTICE** that Defendant GlaxoSmithKline LLC ("GSK" or "Removing Defendant") hereby removes this action from the Superior Court of the State of California, County of San Francisco, to the United States District Court for the Northern District of California. Removal is based on 28 U.S.C. §§ 1332, 1441, and 1446, as amended in relevant part by the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 ("CAFA"), and authorized by 28 U.S.C. § 1453.

**BACKGROUND**

1. On June 27, 2013, Plaintiffs commenced this action, entitled *Dudley, et al. v. McKesson Corporation, et al.*, Case No. CGC-13-532443 ("the/this action"), against GSK by filing a Complaint in San Francisco County Superior Court. Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of Plaintiffs' Complaint is attached hereto as Exhibit "A."

2. No further proceedings have been had in the state court action.

3. The instant action is one of 21 multi-plaintiff lawsuits involving approximately 1,138 plaintiffs alleging injuries from ingestion of Avandia filed on June 27, 2013 in the Superior Court of California, San Francisco County. (*See* List of Related Cases/Plaintiffs, attached hereto as Exhibit "D", and section IV.C, *infra*).

4. Plaintiffs[1] allege injuries related to cardiac events as a result of ingestion of the prescription diabetes medication Avandia. Plaintiffs seek to recover compensatory and punitive damages under numerous legal theories.

5. As more fully set forth below, this case is properly removed to this Court pursuant to 28 U.S.C. § 1441 because there is federal jurisdiction on two independent grounds: 1) as a mass action, pursuant to 28 U.S.C. § 1332(d)(11); and 2) as an action between citizens of different states in which the amount in controversy exceeds $75,000. GSK has satisfied the procedural requirements

---

[1] "Plaintiffs" includes "Ingesting Plaintiffs," meaning those Plaintiffs who were prescribed and ingested Avandia, and "Spouse Plaintiffs," meaning those Plaintiffs who are the spouses of someone who was prescribed and ingested Avandia. *See* Exhibit A, ¶¶ 63-64.

NOTICE OF REMOVAL BY DEFENDANT GLAXOSMITHKLINE LLC UNDER 28 U.S.C. §§ 1332 AND 1441(B)

for removal set forth in 28 U.S.C. §§ 1446 and 1453. In filing this Notice of Removal GSK, reserves all defenses, including but not limited to lack of personal jurisdiction, improper venue, insufficient process, insufficient service of process, and failure to join and/or misjoinder of parties.

## I.   GSK HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL

6.   GSK has not been served with the Complaint. Upon information and belief, McKesson Corporation was served with the Complaint on July 1, 2013. This Notice is therefore timely under 28 U.S.C. § 1446(b).

7.   Venue is proper in this Court pursuant to 28 U.S.C. § 84(a) because it is the "district and division embracing the place where such action is pending." *See* 28 U.S.C. § 1441(a).

8.   All of the properly joined and served defendants consent to this removal. The Complaint purports to name McKesson Corporation (hereinafter, "McKesson") as a co-defendant, but because McKesson has not been properly joined in this lawsuit, its consent to this removal is not required. *See* 28 U.S.C. § 1441(b); *see Hewitt v. City of Stanton*, 798 F.2d 1230, 1233 (9th Cir. 1986) (co-defendants who are fraudulently joined need not join in a removal).

9.   No party in interest properly joined and served as a defendant is a citizen of the State in which this action was brought, California. *See* 28 U.S.C. § 1441(b). The Complaint purports to name McKesson, a California citizen, as a co-defendant. But as discussed in more detail below, because McKesson is fraudulently joined to this lawsuit, its California citizenship is not a barrier to removal jurisdiction under the forum defendant rule. *See* 28 U.S.C. § 1441(b); *United Computer Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002).

10.   No previous request has been made for the relief requested herein.

11.   Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served on Plaintiffs and a copy is being filed with the Clerk of the Court for the Superior Court of the State of California for the County of San Francisco.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

— 4 —

## II. REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different states.

### A. The Amount In Controversy Requirement Is Satisfied

13.     It is apparent on the face of the Complaint that Plaintiffs seek an amount in controversy in excess of $75,000, exclusive of costs and interest.[2]

14.     Plaintiffs allege that they suffered "personal injury [and] economic damages" from the use of Avandia. *See* Ex. A, Complaint, ¶ 1. Moreover, Plaintiffs claim to have suffered from "dangerous, severe and life threatening side effects caused by this drug, including but not limited to heart attacks and congestive heart failure, strokes and other injuries." *Id.* The Complaint seeks damages for "past and future medical and incidental expenses," "past and future loss of earnings and/or earning capacity," and "future medical monitoring costs." *Id.* at p. 35, Prayer for Relief.

15.     Plaintiffs also seek punitive damages. *Id.* Punitive damages are included in the calculation of the amount in controversy. *See Bell v. Preferred Life Assurance Society*, 320 U.S. 238, 240 (1943). Given the allegations set forth above, the face of the Complaint makes clear that Plaintiffs seek in excess of $75,000, exclusive of interest and costs.

16.     Federal courts considering complaints alleging similar damages have held that the amount in controversy requirement readily is met and diversity jurisdiction exists. *See e.g., White v. FCI USA, Inc.*, 319 F.3d 672, 674 (5th Cir. 2003) (it was "facially apparent" that claim exceeded $75,000 based on plaintiff's "lengthy list of compensatory and punitive damages"); *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 296 (S.D.N.Y. 2001) (concluding that complaint

---

2 GSK does not concede that Plaintiffs are in fact, entitled to recover more than $75,000. *See Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 159 (6th Cir. 1993) (observing that a removing defendant is not required "to research, state and prove the plaintiff's claims for damages"); *Kelderman v. Remington Arms Co.*, 734 F. Supp. 1527, 1528 (S.D. Iowa 1990) (rejecting a plaintiff's attempt to "place [a] defendant in the awkward position of embracing a concession on the important issue of damages," to establish jurisdiction, noting that a "defendant need not go that far"). Indeed, GSK denies that Plaintiffs are entitled to recover any damages.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

NOTICE OF REMOVAL BY DEFENDANT GLAXOSMITHKLINE LLC UNDER 28 U.S.C. §§ 1332 AND 1441(B)

"obviously asserts a claim exceeding $75,000" where plaintiff seeks "compensatory and punitive damages" for alleged "serious and life-threatening medical conditions" and economic losses due to the use of a prescription medication).

**B.     There Is Complete Diversity Of Citizenship**

17.     There is complete diversity of citizenship between all properly joined parties to this action.  As explained in more detail below, McKesson, a California citizen, is fraudulently joined, and its citizenship should therefore be ignored for purposes of removal jurisdiction.

18.     Plaintiff LINDA DUDLEY is, and was at all relevant times, a citizen of the State of California.  Plaintiff ALESIA DIGGS is, and was at all relevant times, a citizen of the State of California.  Plaintiff DARLENE BRACEY is, and was at all relevant times, a citizen of the State of Pennsylvania.  Plaintiff JOE BRADFORD is, and was at all relevant times, a citizen of the State of Indiana.  Plaintiff ALLAN BRADY is, and was at all relevant times, a citizen of the State of Pennsylvania.  Plaintiff BILLY BROWN is, and was at all relevant times, a citizen of the State of Georgia.  Plaintiff DAVID BROWN is, and was at all relevant times, a citizen of the State of Pennsylvania.  Plaintiff ANTHONY BYRD is, and was at all relevant times, a citizen of the State of Illinois.  Plaintiff VICKIE CAGLE is, and was at all relevant times, a citizen of the State of Alabama.  Plaintiff NICHOLAS COLEMAN is, and was at all relevant times, a citizen of the State of Washington.  Plaintiff PEGGY CONSTANCE is, and was at all relevant times, a citizen of the State of North Carolina.  Plaintiff SUZANNE COOPER is, and was at all relevant times, a citizen of the State of Texas.  Plaintiff WILLIAM CRENSHAW is, and was at all relevant times, a citizen of the State of Kentucky.  Plaintiff SHIRLEY CRUM is, and was at all relevant times, a citizen of the State of Tennessee.  Plaintiff CARMEN CRUZ is, and was at all relevant times, a citizen of the State of New Jersey.  Plaintiff TIMOTHY DAVIS is, and was at all relevant times, a citizen of the State of Texas.  Plaintiff DELORES DEGRAFFENRIED is, and was at all relevant times, a citizen of the State of New York.  Plaintiff ARTHURENE EUBANKS is, and was at all relevant times, a citizen of the State of Michigan.  Plaintiff RON EVANS is, and was at all relevant times, a citizen of the State of Texas.  Plaintiff DANNY FARRINGTON is, and was at all relevant times, a citizen of the State of Texas.  Plaintiff JACQUELINE FOSTER is, and was at all relevant times, a citizen of the

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 6 –

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1　State of Ohio. Plaintiff KINNEY FULLER is, and was at all relevant times, a citizen of the State of

2　New York. Plaintiff MICHAEL GAMAREL is, and was at all relevant times, a citizen of the State

3　of New Jersey. Plaintiff GWENDOLYN GEIGER is, and was at all relevant times, a citizen of the

4　State of Illinois. Plaintiff MARK GEORGE is, and was at all relevant times, a citizen of the State of

5　Georgia. Plaintiff ABELL GORE is, and was at all relevant times, a citizen of the State of Virginia.

6　Plaintiff HAROLD GREEN is, and was at all relevant times, a citizen of the State of South Carolina.

7　Plaintiff TERESA GRIFFIN is, and was at all relevant times, a citizen of the State of Arizona.

8　Plaintiff WILLIE GRIGGS is, and was at all relevant times, a citizen of the State of Texas. Plaintiff

9　WILLIAM HALL is, and was at all relevant times, a citizen of the State of Idaho. Plaintiff

10　CHARLENE HOWARD is, and was at all relevant times, a citizen of the State of Georgia. Plaintiff

11　CHRISTOPHER INGRAM is, and was at all relevant times, a citizen of the State of Louisiana.

12　Plaintiff JESSIE JENKINS is, and was at all relevant times, a citizen of the State of Texas. Plaintiff

13　JIMMY JIMENEZ is, and was at all relevant times, a citizen of the State of Texas. Plaintiff

14　DELMAR JONES is, and was at all relevant times, a citizen of the State of Michigan. Plaintiff

15　LARRY LECHAN is, and was at all relevant times, a citizen of the State of Massachusetts. Plaintiff

16　JAMES LONGWELL is, and was at all relevant times, a citizen of the State of West Virginia.

17　Plaintiff FRANCIS LONO is, and was at all relevant times, a citizen of the State of Hawaii. Plaintiff

18　TOWADA LUNDY is, and was at all relevant times, a citizen of the State of Georgia. Plaintiff

19　BARBARA MARSH is, and was at all relevant times, a citizen of the State of Washington. Plaintiff

20　ALINDA MCCULLUM is, and was at all relevant times, a citizen of the State of Mississippi.

21　Plaintiff AARON MCFADDEN is, and was at all relevant times, a citizen of the State of South

22　Carolina. Plaintiff SUZANNE MCPHEARSON is, and was at all relevant times, a citizen of the

23　State of Indiana. Plaintiff LINDA MILSTID is, and was at all relevant times, a citizen of the State

24　of Alabama. Plaintiff JEFFREY MIREK is, and was at all relevant times, a citizen of the State of

25　Connecticut. Plaintiff JOHN MITCHELL is, and was at all relevant times, a citizen of the State of

26　Tennessee. Plaintiff JOAN MOORE is, and was at all relevant times, a citizen of the State of New

27　York. Plaintiff URI NEUMAN is, and was at all relevant times, a citizen of the State of Louisiana.

28　(Exhibit A, Complaint ¶¶ 15-62).

NOTICE OF REMOVAL BY DEFENDANT GLAXOSMITHKLINE LLC UNDER 28 U.S.C. §§ 1332 AND 1441(B)

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

19.     At the time Plaintiffs commenced this action, and at the time of the removal, GSK was, and is, a Delaware limited liability company.  For diversity purposes, the citizenship of limited liability companies is determined by the citizenship of all of its members.  *See Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).  The sole member of GlaxoSmithKline LLC is GlaxoSmithKline Holdings (Americas) Inc.  GlaxoSmithKline Holdings (Americas) Inc. is a Delaware corporation with its principal place of business in Wilmington, Delaware.  Therefore, GSK is a citizen of Delaware.  *See Lucier v. SmithKline Beecham Corp.*, Nos. 12–2561, 12–2562, 12–2563, 12–2564, 12–2565, 2013 WL 2456043, at *14 (3d Cir. June 7, 2013) (affirming that GSK LLC is a citizen of Delaware).

20.     The remaining named defendant, McKesson, is and was at the time Plaintiffs commenced this action a corporation incorporated and existing under the laws of Delaware with its principal place of business in California, and, thus, is a citizen of Delaware and California for purposes of determining diversity.  However, McKesson has been fraudulently joined and, therefore, its citizenship must be ignored for the purpose of determining the propriety of removal.  *See McCabe v. Gen. Foods*, 811 F.2d 1336, 1339 (9th Cir. 1987).  A defendant is fraudulently joined and the defendant's presence in the lawsuit is ignored for purposes of determining diversity where no viable cause of action has been stated against the resident defendant.  *See Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318-19 (9th Cir. 1998); *TPS Utilicom Servs., Inc. v. AT&T Corp.*, 223 F. Supp. 2d 1089, 1100 (C.D. Cal. 2002).[3]

3 Upon information and belief, none of the remaining DOE defendants has been substituted with any named defendants or been served with process in the state court action. For purposes of removal, "the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(a); *accord Soliman v. Phillip Morris Inc.*, 311 F.3d 966, 971 (9th Cir. 2002); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

– 8 –

**III.    THE CITIZENSHIP OF MCKESSON MUST BE IGNORED BECAUSE IT IS FRAUDULENTLY JOINED, AS THE COMPLAINT STATES NEITHER A FACTUAL NOR LEGAL BASIS FOR A CLAIM AGAINST IT**

21.    A defendant is fraudulently joined "if the plaintiff fails to state a cause of action against the resident defendant, and the failure is obvious according to the settled rules of the state." *Morris*, 236 F.3d at 1067 (citations omitted); *accord United Computer Sys.*, 298 F.3d at 761; *In re Phenylpropanolamine (PPA) Prod. Liab. Litig. ("In re PPA")*, MDL No. 1407, Docket No. C02-423R, 2002 WL 34418423 (W.D. Wash. Nov. 27, 2002) (denying plaintiffs' motion to remand after finding resident retailer fraudulently joined). The fraudulent joinder of McKesson is obvious under well-settled state law because: (1) Plaintiffs have failed to allege any factual basis for the claims asserted against McKesson and (2) there is no legal basis for the claims Plaintiffs seek to bring against McKesson as pleaded.

22.    McKesson is fraudulently joined because Plaintiffs have failed to make any material allegations against it. *See, e.g., Brown v. Allstate Insur.*, 17 F. Supp. 2d 1134, 1137 (S.D. Cal. 1998) (finding in-state defendants fraudulently joined where "no material allegations against [the in-state defendants] are made"); *Lyons v. Am. Tobacco Co.*, No. Civ. A. 96-0881-BH-S, 1997 WL 809677, at *5 (S.D. Ala. Sept. 30, 1997) (holding that there is "no better admission of fraudulent joinder of [the resident defendants]" than the failure of plaintiff "to set forth any specific factual allegations" against them). Here, there are no specific allegations directed toward McKesson, compelling the conclusion that Plaintiffs fraudulently joined McKesson in an attempt to defeat diversity jurisdiction. *See, e.g., Lyons*, 1997 WL 809677, at *5. Plaintiffs cannot cure this deficiency by simply relying on allegations directed toward "Defendants" alone. *See In re PPA*, MDL No. 1407, 2002 WL 34418423, at *5 (finding allegations directed toward "defendants" or "all defendants" insufficient).

23.    The crux of the Complaint is an alleged failure to warn adequately of alleged risks associated with the use of Avandia, yet notably absent are any specific allegations that McKesson made any specific representations or warranties to Plaintiffs or Plaintiffs' prescribing physicians, or that Plaintiffs or Plaintiffs' prescribing physicians relied on any such specific representations or warranties by McKesson. Accordingly, Plaintiffs have failed to meet the minimal pleading

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 9 –

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    requirements to state a claim against McKesson.  *See, e.g., Taylor AG Indus. V. Pure-Gro*, 54 F.3d

2    555, 558 (9th Cir. 1995) (dismissing breach of express warranty claim against distributor due to

3    plaintiffs' failure to identify any statements made by the distributor that were inconsistent with or

4    went beyond either the product labels or the Product Guide provided by manufacturer); *see also Cox*

5    *v. Depuy Motech, Inc.*, No. 95-CV-3848-L(JA), 2000 WL 1160486 (S.D. Cal. Mar. 29, 2000)

6    (causation is an essential element of strict liability and negligence claims); *Keith v. Buchanan*, 173

7    Cal. App. 3d 13, 25 (1985) (actual reliance is an element of an implied warranty claim); *B.L.M. v.*

8    *Sabo & Deitsch*, 55 Cal. App. 4th 823, 834 (1997) (to state a claim of negligent misrepresentation,

9    plaintiff must at least identify the alleged misrepresentation); *In re Pradaxa (Dabigatran Etexilate)*

10   *Prods. Liab. Litig.*, No. 3:12-cv-600922-DRH-SCW, slip op. at 17 (S.D. Ill. Feb. 22, 2013) (finding

11   that plaintiff failed to allege a causal link between McKesson and the allegedly injurious product) (a

12   true and correct copy is attached hereto as Exhibit "B").

13        24.     Moreover, there is no legal basis for the causes of action that Plaintiffs assert against

14   McKesson because the claims are based on an alleged failure to warn that is premised, for

15   McKesson, on a non-existent duty to warn.  Under California law, McKesson bears no duty to warn

16   based on the "learned intermediary" doctrine.  The "learned intermediary" doctrine, the foundation

17   of prescription drug product liability law, provides that the duty to warn about a drug's risks runs

18   from the manufacturer to the physician (the "learned intermediary"), and then from the physician to

19   the patient.  *See Brown v. Superior Court (Abbott Labs.)*, 44 Cal. 3d 1049, 1061-62, n.9 (1988);

20   *Carlin v. Superior Court (Upjohn Co.)*, 13 Cal. 4th 1104, 1116 (1996).  Thus, an alleged distributor,

21   like McKesson, has no duty whatsoever.  *See, e.g., Barlow v. Warner-Lambert Co.*, Case No. CV 03

22   1647 R (RZx), slip op. at 2 (C.D. Cal. Apr. 28, 2003) ("The Court finds that there is no possibility

23   that plaintiffs could prove a cause of action against McKesson, an entity which distributed this FDA-

24   approved medication [Rezulin] to pharmacists in California"; denying motion to remand) (a true and

25   correct copy is attached hereto as Exhibit "C"); *Skinner v. Warner-Lambert Co.*, Case No. CV 03

26   1643-R (RZx), 2003 WL 25598915 (C.D. Cal. Apr. 28, 2003) (same); *Murphy v. E.R. Squibb &*

27   *Sons, Inc.*, 40 Cal. 3d 672, 680-81 (1985) (under the learned intermediary doctrine, retail pharmacies

28   can have no general duty to warn consumers of effects of prescription drugs); *In re Baycol Prods.*

– 10 –

*Litig.*, MDL No. 1431 (MJD), Case No. 02-139, 2002 WL 32155268 (D. Minn. May 24, 2002)

(retail distributor of prescription drugs fraudulently joined); *Schaerrer v. Stewart's Plaza Pharmacy*,

79 P.3d 922, 929 (Utah 2003) (declining to extend duty to warn to retail distributor of prescription

diet drug as long as its "ability to distribute prescription drugs is limited by the highly restricted

FDA-regulated drug distribution system in this country"). Furthermore, even if McKesson had

distributed any of Plaintiffs' medication, as a mere distributor it could not have affected the label. It

is therefore impossible for Plaintiffs to state a claim against McKesson based on a failure to warn

theory. *See PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567 (2011) (holding that state law tort claims

against generic manufacturers are preempted because of generic manufacturers' inability to modify

FDA-approved warning labels); *see also Stevens v. Cmty. Healthcare, Inc.*, No. ESCV200702080,

2011 WL 6379298 (Mass. Superior Oct. 5, 2011) (applying *PLIVA* to pharmaceutical distributors,

who are also unable to modify FDA-approved warning label); *In re Fosamax Prods. Liab. Litig.*,

2012 U.S. Dist. LEXIS 5817, at *21 (D.N.J. Jan. 17, 2012) ("As a distributor of Fosamax, Watson

has no power to change Fosamax labeling."). For this reason, courts have rejected imposing liability

on distributors like McKesson for failure to warn of the risk of a prescribed drug.

25.     The general allegation that "Defendants" knew of the alleged risks associated with the

use of Avandia are particularly deficient because the wholly conclusory claims are undermined and

contradicted by the more specific allegations of GSK's concealment and misrepresentation of the

same information. *See, e.g.*, *In re PPA*, 2002 WL 34418423, at *7 (allegations that "manufacturer

defendants concealed material facts regarding PPA through product packaging, labeling, advertising,

promotional campaigns and materials, and other methods . . . directly undermines and contradicts the

idea that [the resident retail defendant] had knowledge or reason to know of alleged defects"). The

allegations of GSK's purported concealment and misrepresentation of the alleged risks of Avandia

belie any inference that McKesson, a wholesale distributor, had knowledge of that which was

allegedly concealed.

26.     Thus, McKesson is fraudulently joined, not "properly joined and served" within the

meaning of 28 U.S.C. § 1441(b), and its California citizenship is not a barrier to removal.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## IV. THIS CASE IS ALSO REMOVABLE AS A MASS ACTION

27. This case is removable pursuant to the mass action provisions of the diversity jurisdiction statute as amended by CAFA. 28 U.S.C. § 1332(d)(11). An action is removable as a mass action if it meets the following requirements:

    a. It involves the monetary relief claims of 100 or more persons that are proposed to be tried jointly on the ground that the plaintiffs' claims involved common questions of law or fact. 28 U.S.C. § 1332(d)(11)(B)(i);

    b. The aggregate amount in controversy exceeds $5,000,000 and the claims of the individual plaintiffs exceed the amount of $75,000. 28 U.S.C. §§ 1332(a), (d)(2), (d)(11)(B)(i); and

    c. Any plaintiff is a citizen of a State different from any defendant. 28 U.S.C. § 1332(d)(2)(A).

### A. The Amount In Controversy is Satisfied

28. It is apparent on the face of the Complaint that Plaintiffs seek an amount in controversy in excess of $75,000, exclusive of costs and interest. See ¶¶ 13-16.

### B. The Diversity Requirement is Satisfied

29. While diversity removal normally requires complete diversity between plaintiffs and defendants, for removal of a mass action, only "minimal diversity" is required. That means, that at least one plaintiff be diverse from one defendant. 28 U.S.C. § 1332(d)(2)(A). This requirement is readily satisfied here.

30. Plaintiffs are alleged to be residents of twenty-five different states. (*See* Ex. A, Complaint ¶¶ 15-62)

31. At the time Plaintiffs commenced this action, and at the time of the removal, GSK was, and is, a Delaware limited liability company. For diversity purposes, the citizenship of limited liability companies is determined by the citizenship of all of its members. *See Johnson v. Columbia Props. Anchorage, LP,* 437 F.3d 894, 899 (9th Cir. 2006). The sole member of GlaxoSmithKline LLC is GlaxoSmithKline Holdings (Americas) Inc. GlaxoSmithKline Holdings (Americas) Inc. is a Delaware corporation with its principal place of business in Wilmington, Delaware. Therefore, GSK

– 12 –

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    is a citizen of Delaware. *See Lucier v. SmithKline Beecham Corp.*, Nos. 12–2561, 12–2562, 12–

2    2563, 12–2564, 12–2565, ---F.3d----, 2013 WL 2456043, at \*14 (3d Cir. June 7, 2013) (affirming

3    that GSK LLC is a citizen of Delaware).

4       **C.    Plaintiffs' Action Involves the Claims of 100 or More Persons**

5       32.      According to the Congress that passed CAFA, the Act "corrects a flaw in the current

6    diversity jurisdiction statute . . . that prevents most interstate class actions from being adjudicated in

7    federal courts" and thus makes it "harder for plaintiffs' counsel to 'game the system.'" The Class

8    Action Fairness Act, S. Rep. 109-14, at 6 (2005). The result is a federal jurisdictional statute that

9    allows "overlapping and 'copycat' cases to be consolidated in a single federal court [and] places the

10    determination of more interstate class action lawsuits in the proper forum—the federal courts." *Id.;*

11    *see also Standard Fire Insurance Company v. Knowles*, 133 S. Ct. 1345 (2013)(concluding that

12    permitting plaintiffs' attorneys' attempt to manipulate the jurisdictional amount in controversy to

13    avoid CAFA jurisdiction would "exalt form over substance" and "squarely conflict with the statute's

14    objective" ). Plaintiffs' counsel filed 21 civil actions, each naming fewer than 100 plaintiffs, on

15    behalf of approximately 1,138 total plaintiffs in the same court on June 27th, all alleging personal

16    injuries in connection with Avandia® use. The plaintiffs allegedly reside in multiple different states,

17    with only a minimal amount of plaintiffs allegedly residing in California. This case and its

18    companion actions therefore are interstate actions brought on behalf of approximately 1,138

19    plaintiffs and are mass actions within the meaning of CAFA. A reading of the Ninth Circuit's

20    decision in *Tanoh v. Dow Chemical Co.,* 561 F.3d 945 (9th Cir. 2009) to condone the random

21    packaging of plaintiffs so as to avoid federal jurisdiction under CAFA would be inconsistent with

22    *Knowles*, which holds that a court should consider the objective of CAFA and not exalt form over

23    substance. Considering the objective of CAFA to provide federal jurisdiction for mass actions

24    involving over 100 plaintiffs, and plaintiffs' counsel's manipulation of the complaints to assign over

25    1,000 individual plaintiffs randomly to 21 separate actions, there is only one conclusion: these

26    actions constitute one mass action under CAFA. Any interpretation otherwise would elevate form

27    over substance and permit counsel to blatantly "game the system."

28       33.      Accordingly, all the jurisdictional requirements for a mass action removal are

NOTICE OF REMOVAL BY DEFENDANT GLAXOSMITHKLINE LLC UNDER 28 U.S.C. §§ 1332 AND 1441(B)

1  satisfied.

2      WHEREFORE, GSK respectfully removes the action from the Superior Court of the State of

3  California for the County of San Francisco to this Court, pursuant to 28 U.S.C. §1441.

4

5      DATED:  July 9, 2013          REED SMITH LLP

6

7      By _Michael K. Brown (K.)_____
                Michael K. Brown

8                Sonja S. Weissman
                Steven J. Boranian

9                Attorneys for Defendant
                GlaxoSmithKline LLC  (formerly known as

10               SmithKline Beecham Corporation d/b/a
                GlaxoSmithKline)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL BY DEFENDANT GLAXOSMITHKLINE LLC UNDER 28 U.S.C. §§ 1332 AND 1441(B)

# EXHIBIT A

NO SUMMONS ISSUED

**F I L E D**
San Francisco County Superior Court

JUN 27 2013

CLERK OF THE COURT
BY: _____
Deputy Clerk

1  Marissa Langhoff (CA SBN 272692)
2  Hunter J. Shkolnik (NY SBN 2031458, CA Pro Hac Vice Status Pending)
   NAPOLI BERN RIPKA SHKOLNIK & ASSOCIATES LLP
3  111 Corporate Drive, Suite 225
   Ladera Ranch, CA 92694
4  Telephone:      (949) 234-6032
   Facsimile:      (949) 429-0892
5  MLanghoff@napolibern.com
   Hunter@Napolibern.com
6  *Attorneys for Plaintiffs*

7

8  **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
   **IN AND FOR THE COUNTY OF SAN FRANCISCO**

9  LINDA DUDLEY, ALESIA DIGGS,
   DARLENE BRACEY, JOE BRADFORD,          Case No. **CGC-13-532443**
10 ALLAN BRADY, BILLY BROWN, DAVID
   BROWN, ANTHONY BYRD, VICKIE            **COMPLAINT FOR DAMAGES JURY**
11 CAGLE, NICHOLAS COLEMAN, PEGGY         **TRIAL DEMAND**
   CONSTANCE, SUZANNE COOPER,
12 WILLIAM CRENSHAW, SHIRLEY CRUM,
   CARMEN CRUZ, TIMOTHY DAVIS,               1.  Strict Products Liability – Design
13 DELORES DEGRAFFENRIED,                        Defect
   ARTHURENE EUBANKS, RON EVANS,            2.  Strict Products Liability –
14 DANNY FARRINGTON,                             Manufacturing Defect
   JACQUELINE FOSTER, KINNEY FULLER,        3.  Strict Products Liability – Failure to
15 MICHAEL GAMAREL,                              Warn
   GWENDOLYN GEIGER, MARK GEORGE,           4.  Negligence
16 ABELL GORE, HAROLD GREEN, TERESA         5.  Breach of Implied Warranty
   GRIFFIN, WILLIE GRIGGS, WILLIAM          6.  Breach of Express Warranty
17 HALL, CHARLENE HOWARD,                    7.  Deceit by Concealment – Ca. Civ.
   CHRISTOPHER INGRAM,  JESSIE                   Code §§ 1709, 1710
18 JENKINS, JIMMY JIMENEZ, DELMAR           8.  Fraud
   JONES, LARRY LECHAN,                      9.  Fraud by Concealment
19 JAMES LONGWELL, FRANCIS LONO,            10. Negligent Misrepresentation
   TOWADA LUNDY,  BARBARA MARSH,            11. Loss of Consortium
20 ALINDA MCCULLUM, AARON
   MCFADDEN,  SUZANNE MCPHEARSON,
21 LINDA MILSTID,  JEFFREY MIREK,
   JOHN MITCHELL, JOAN MOORE, and URI
22 NEUMAN,

23                              Plaintiffs,
24 vs.
25
26
27
28                                    1
                          Complaint for Damages

| | |
|---|---|
| 1 | McKESSON CORPORATION, a corporation, SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, and DOES 1 THROUGH 100, Inclusive, |
| 2 | |
| 3 | |
| 4 | Defendants. |

1    COME NOW Plaintiffs, and each of them, and complain and allege against Defendants,

2    Does 1 through 100, and each of them as follows:

3    **GENERAL ALLEGATIONS**

4    1.    This action involves claims of personal injury, economic damages, punitive

5    damages, and other claims of damage arising from the use of Rosiglitazone, a pharmaceutical

6    compound researched, designed, formulated, compounded, tested, manufactured, produced,

7    processed, assembled, inspected, distributed, marketed, labeled, promoted, packaged, advertised

8    for sale, prescribed or otherwise placed in the stream of interstate commerce by Defendant

9
     SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, ("GSK") under
10
     the trade names Avandia, Avandamet, and Avandaryl (hereinafter collectively referred to as
11
12   "Avandia") and marketed, sold, and distributed by Defendant MCKESSON CORPORATION

13   ("McKesson") and is brought on behalf of the named plaintiffs, collectively referred to herein as

14   "Plaintiffs". This action seeks, among other relief, general and special damages and equitable

15   relief in order to enable the living Plaintiffs who ingested Avandia to treat and monitor the

16   dangerous, severe and life threatening side effects caused by this drug, including but not limited

17   to heart attacks and congestive heart failure, stokes and other injuries.
18
     2.    Avandia is a member of a class of drugs known as Thiazolidinediones (TZD's)
19
     and is used in the treatment of persons with Type 2 Diabetes.  Defendants negligently and
20
21   intentionally misrepresented that Avandia was safe and effective, when in fact it was causing

22   and contributing to serious cardiovascular events, including, but not limited to, heart attacks and

23   congestive heart failure.  Plaintiffs' all ingested Avandia and suffered injury as a result.

24   3.    The true names or capacities whether individual, corporate or otherwise, of

25   Defendants Does 1 through 100, inclusive, are unknown to Plaintiffs who therefore, pursuant to

26   *California Code of Civil Procedure* §474, sue said Defendants by such fictitious names.
27

28                                    3
                              Complaint for Damages

Plaintiffs believe and allege that each of the Defendants designated herein by fictitious names is in some manner legally responsible for the events and happenings herein referred to and caused damages proximately and foreseeably to Plaintiffs as alleged herein.

4. Plaintiffs will ask leave to amend this Complaint to state said Defendants' true identities and capacities when the same has been ascertained.

5. Plaintiffs are informed and believe and based thereupon allege that each of the Defendants in all matters referred to herein was in some manner responsible for the injuries and losses suffered by the Plaintiff.

6. Plaintiffs are informed and believe and based thereupon allege that at all times herein mentioned, each of the Defendants was the agent, servant, and/or employee or occupied other relationships with each of the other named Defendants and at all times herein mentioned acted within the course and scope of said agency and/or employment and/or other relationship and each other Defendant has ratified, consented to, and approved the acts of his agents, employees, and representatives, and that each actively participated in, aided and abetted, or assisted one another in the commission of the wrongdoing alleged in this Complaint.

7. At all times herein mentioned, each of the Defendants was the agent, servant, partner, aider and abettor, co-conspirator and joint venturer of each of the remaining Defendants herein and were at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and joint venture and rendered substantial assistance and encouragement to the other Defendants, knowing that their conduct constituted a breach of duty.

8. There exists, and at all times herein mentioned, there existed, a unity of interest in ownership between certain Defendants and other certain Defendants such that any individuality and separateness between the certain Defendants has ceased and these Defendants

are the alter ego of the other certain Defendant, and exerted control over those Defendants. Adherence to the fiction of the separate existence of these certain Defendants as any entity distinct from other certain Defendants will permit an abuse of the corporate privilege and would sanction fraud and would promote injustice.

9.      The injuries and damages to Plaintiffs were caused by the wrongful acts, omissions, and fraudulent representations of Defendants, many of which occurred within the State of California.

10.     At all times herein mentioned, Defendants were each engaged in the business of, or were successors in interest to, entities engaged in the business of research, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging and/or advertising for sale or selling the drug Avandia.

11.     At all times herein mentioned, Defendants were each authorized to do business within the State of California and did in fact supply the aforementioned products within the State of California.

12.     At all times herein mentioned, the officers and directors of Defendants authorized and directed the production and promotion of the aforementioned products when they knew, or with the exercise of reasonable care should have known, of the hazards and dangerous propensities of said products, and thereby actively participated in the tortious conduct which resulted in the physical injuries described herein.

**JURISDICTION AND VENUE**

13.     Plaintiffs are informed and believe, and thereon allege that at all times herein mentioned each of the Defendants hereto are individuals, corporations, partnerships and/or unincorporated associations organized and existing under and by virtue of the laws of the State

5
Complaint for Damages

of California, or the laws of some other state or foreign jurisdiction, and that said Defendants, and each of them, were and are authorized to do and are doing business in the State of California, or the laws of some other state or foreign jurisdiction, and that said Defendants, and each of them, were and are authorized to do and are doing business in the State of California, and that said Defendants have regularly conducted business in the County of San Francisco, State of California.

14.     Venue is proper in this county because at least one Defendant, McKesson Corporation, has its principal place of business in the County of San Francisco, State of California.

**PLAINTIFFS**

15.     Plaintiff LINDA DUDLEY, is a natural person currently residing in California. Plaintiff Dudley was prescribed and ingested Avandia in or around 1999 and thereafter. In or around 2002, Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to a stroke. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

16.     Plaintiff ALESIA DIGGS, is a natural person currently residing in California. Plaintiff Diggs was prescribed and ingested Avandia in or around 2000 and thereafter. In or around 2010, Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to a heart attack. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

17.     Plaintiff DARLENE BRACEY is a natural person currently residing in Pennsylvania. Plaintiff Bracey was prescribed and ingested Avandia on or around 2007 and thereafter. In or around 2012, Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to heart attack. Plaintiff was

unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

18. Plaintiff JOE BRADFORD is a natural person currently residing in Indiana. Plaintiff Bradford was prescribed and ingested Avandia on or around 2005 and thereafter. In or around 2005, Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to coronary atherosclerosis and heart attack. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

19. Plaintiff ALLAN BRADY is a natural person currently residing in Pennsylvania. Plaintiff Brady was prescribed and ingested Avandia on or around 2006 and thereafter. In or around 2006, Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to coronary atherosclerosis and heart attack. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

20. Plaintiff BILLY BROWN is a natural person currently residing in Georgia. Plaintiff Brown was prescribed and ingested Avandia on or around 2000 and thereafter. In or around 2003, Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to congestive heart failure. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

21. Plaintiff DAVID BROWN is a natural person currently residing in Pennsylvania. Plaintiff Brown was prescribed and ingested Avandia on or around 2003 and thereafter. In or around 2007, Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to congestive heart failure. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

Complaint for Damages

22. Plaintiff ANTHONY BYRD is a natural person currently residing in Illinois. Plaintiff Byrd was prescribed and ingested Avandia. Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to stroke and congestive heart failure. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

23. Plaintiff VICKIE CAGLE is a natural person currently residing in Alabama. Plaintiff Cagle was prescribed and ingested Avandia on or around 2005 and thereafter. In or around 2005, Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to heart attack and coronary bypass thrombosis. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

24. Plaintiff NICHOLAS COLEMAN is a natural person currently residing in Washington. Plaintiff Coleman was prescribed and ingested Avandia on or around 2003 and thereafter. Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to stroke and congestive heart failure. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

25. Plaintiff PEGGY CONSTANCE is a natural person currently residing in North Carolina. Plaintiff Constance was prescribed and ingested Avandia on or around 2000 and thereafter. In or around 2011, Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to stroke. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

26. Plaintiff SUZANNE COOPER is a natural person currently residing in Texas. Plaintiff Cooper was prescribed and ingested Avandia. Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to heart

8
Complaint for Damages

attack. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

27. Plaintiff WILLIAM CRENSHAW is a natural person currently residing in Kentucky. Plaintiff Crenshaw was prescribed and ingested Avandia on or around 2000 and thereafter. In or around 2005, Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to heart attack. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

28. Plaintiff SHIRLEY CRUM is a natural person currently residing in Tennessee. Plaintiff Crum was prescribed and ingested Avandia on or around 2005 and thereafter. In or around 2006, Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to heart attack. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

29. Plaintiff CARMEN CRUZ is a natural person currently residing in New Jersey. Plaintiff Cruz was prescribed and ingested Avandia on or around 2005 and thereafter. In or around 2011, Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to stroke. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

30. Plaintiff TIMOTHY DAVIS is a natural person currently residing in Texas. Plaintiff Davis was prescribed and ingested Avandia on or around 2004 and thereafter. In or around 2006, Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to heart attack. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

Complaint for Damages

31.  Plaintiff DELORES DEGRAFFENRIED is a natural person currently residing in New York. Plaintiff Degraffenried was prescribed and ingested Avandia on or around 2006 and thereafter. In or around 2006, Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to heart attack. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

32.  Plaintiff ARTHURENE EUBANKS is a natural person currently residing in Michigan. Plaintiff Eubanks was prescribed and ingested Avandia on or around 2002 and thereafter. In or around 2002, Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to heart attack. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

33.  Plaintiff RON EVANS is a natural person currently residing in Texas. Plaintiff Evans was prescribed and ingested Avandia on or around 1999 and thereafter. In or around 1999, Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to heart attack. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

34.  Plaintiff DANNY FARRINGTON is a natural person currently residing in Texas. Plaintiff Farrington was prescribed and ingested Avandia on or around 2006 and thereafter. In or around 2007, Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to heart attack. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

35.  Plaintiff JACQUELINE FOSTER is a natural person currently residing in Ohio. Plaintiff Foster was prescribed and ingested Avandia on or around 2000 and thereafter. In or

10
Complaint for Damages

around 2005, Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to heart attack. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

36. Plaintiff KINNEY FULLER is a natural person currently residing in New York. Plaintiff Fuller was prescribed and ingested Avandia. In or around 2004, Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to heart attack. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

37. Plaintiff MICHAEL GAMAREL is a natural person currently residing in New Jersey. Plaintiff Gamarel was prescribed and ingested Avandia on or around 1999 and thereafter. In or around 2000, Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to heart attack. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

38. Plaintiff GWENDOLYN GEIGER is a natural person currently residing in Illinois. Plaintiff Geiger was prescribed and ingested Avandia on or around 2007 and thereafter. In or around 2008, Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to congestive heart failure. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

39. Plaintiff MARK GEORGE is a natural person currently residing in Georgia. Plaintiff George was prescribed and ingested Avandia on or around 1999 and thereafter. In or around 2000, Plaintiff suffered severe physical, economic and emotional injuries as a result of

said Avandia, including but not limited to heart attack. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

40.    Plaintiff ABELL GORE is a natural person currently residing in Virginia. Plaintiff Gore was prescribed and ingested Avandia on or around 2000 and thereafter. In or around 2003, Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to heart attack. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

41.    Plaintiff HAROLD GREEN is a natural person currently residing in South Carolina. Plaintiff Green was prescribed and ingested Avandia on or around 1999 and thereafter. Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to heart attack. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

42.    Plaintiff TERESA GRIFFIN is a natural person currently residing in Arizona. Plaintiff Griffin was prescribed and ingested Avandia on or around 1999 and thereafter. In or around 2007, Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to stroke and heart attack. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

43.    Plaintiff WILLIE GRIGGS is a natural person currently residing in Texas. Plaintiff Griggs was prescribed and ingested Avandia on or around 2007 and thereafter. In or around 2007, Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to heart attack and congestive heart failure. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

44. Plaintiff WILLIAM HALL is a natural person currently residing in Idaho. Plaintiff Hall was prescribed and ingested Avandia on or around 2000 and thereafter. In or around 2005, Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to congestive heart failure. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

45. Plaintiff CHARLENE HOWARD is a natural person currently residing in Georgia. Plaintiff Howard was prescribed and ingested Avandia on or around 2003 and thereafter. In or around 2009, Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to heart attack. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

46. Plaintiff CHRISTOPHER INGRAM is a natural person currently residing in Louisiana. Plaintiff Ingram was prescribed and ingested Avandia. In or around 2008, Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to heart attack. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

47. Plaintiff JESSIE JENKINS is a natural person currently residing in Texas. Plaintiff Jenkins was prescribed and ingested Avandia on or around 2008 and thereafter. Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to heart attack. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

48. Plaintiff JIMMY JIMENEZ is a natural person currently residing in Texas. Plaintiff Jimenez was prescribed and ingested Avandia. In or around 2009, Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not

13
Complaint for Damages

limited to heart attack. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

49.     Plaintiff DELMAR JONES is a natural person currently residing in Michigan. Plaintiff Jones was prescribed and ingested Avandia on or around 2009 and thereafter. In or around 2011 Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to congestive heart failure. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

50.     Plaintiff LARRY LECHAN is a natural person currently residing in Massachusetts. Plaintiff Lechan was prescribed and ingested Avandia on or around 2008 and thereafter. Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to stroke. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

51.     Plaintiff JAMES LONGWELL is a natural person currently residing in West Virginia. Plaintiff Longwell was prescribed and ingested Avandia on or around 2001 and thereafter. In or around 2008, Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to stroke. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

52.     Plaintiff FRANCIS LONO is a natural person currently residing in Hawaii. Plaintiff Lono was prescribed and ingested Avandia on or around 1999 and thereafter. In or around 2000, Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to stroke. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

53.     Plaintiff TOWADA LUNDY is a natural person currently residing in Georgia. Plaintiff Lundy was prescribed and ingested Avandia on or around 1997 and thereafter. In or

around 1997, Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to stroke. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

54.     Plaintiff BARBARA MARSH is a natural person currently residing in Washington. Plaintiff Marsh was prescribed and ingested Avandia on or around 2005 and thereafter. In or around 2005, Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to heart attack. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

55.     Plaintiff ALINDA MCCULLUM is a natural person currently residing in Mississippi. Plaintiff McCullum was prescribed and ingested Avandia on or around 2003 and thereafter. In or around 2009, Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to congestive heart failure, acute coronary syndrome, and stroke. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

56.     Plaintiff AARON MCFADDEN is a natural person currently residing in South Carolina. Plaintiff McFadden was prescribed and ingested Avandia on or around 2005 and thereafter. In or around 2006, Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to congestive heart failure. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

57.     Plaintiff SUZANNE MCPHEARSON is a natural person currently residing in Indiana. Plaintiff McPhearson was prescribed and ingested Avandia on or around 2004 and thereafter. In or around 2007, Plaintiff suffered severe physical, economic and emotional

injuries as a result of said Avandia, including but not limited to congestive heart failure, heart attack, and myocardial infarction. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

58.  Plaintiff LINDA MILSTID is a natural person currently residing in Alabama. Plaintiff Milstid was prescribed and ingested Avandia on or around 2003 and thereafter. In or around 2005, Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to congestive heart failure. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

59.  Plaintiff JEFFREY MIREK is a natural person currently residing in Connecticut. Plaintiff Mirek was prescribed and ingested Avandia on or around 2006 and thereafter. Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to heart attack. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

60.  Plaintiff JOHN MITCHELL is a natural person currently residing in Tennessee. Plaintiff Mitchell was prescribed and ingested Avandia on or around 2008 and thereafter. In or around 2010, Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to stroke. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

61.  Plaintiff JOAN MOORE is a natural person currently residing in New York. Plaintiff Mitchell was prescribed and ingested Avandia on or around 2008 and thereafter. Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to a heart attack. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

62.     Plaintiff URI NEUMAN, is a natural person currently residing in Louisiana. Plaintiff Neuman was prescribed and ingested Avandia in or around 1999 and thereafter. In or around 2001, Plaintiff suffered severe physical, economic and emotional injuries as a result of said Avandia, including but not limited to a heart attack, congestive heart failure, and stent. Plaintiff was unaware the Plaintiff's injuries were caused by Avandia until within two years of filing this complaint.

63.     As used herein, "Ingesting Plaintiffs" shall mean to refer to the plaintiffs identified herein as someone who was prescribed and ingested Avandia.

64.     As used herein, "Spouse Plaintiffs" shall mean to refer to the plaintiffs identified herein as the spouse of someone who was prescribed and ingested Avandia.

## DEFENDANTS

65.     Defendant McKesson Corporation is a pharmaceutical distribution and marketing company organized and existing under the laws of the State of Delaware, with its headquarters at One Post Street, San Francisco, California 94104.

66.     Defendant     SMITHKLINE     BEECHAM     CORPORATION     d/b/a GLAXOSMITHKLINE, a Pennsylvania corporation was, and still is, a corporation duly existing under and by virtue of the laws of the State of Pennsylvania with its principal place of business in Philadelphia, Pennsylvania.

67.     When referring collectively to all Defendants in this action, Plaintiffs will use the term "Defendants".

## FACTUAL ALLEGATIONS

68.     This is an action for injuries and damages suffered by Plaintiffs, and each of them, as a direct and proximate result of the Defendants' negligent and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting,

17
Complaint for Damages

marketing, distribution, labeling, and/or sale of Avandia.

69.     Avandia was designed, developed, manufactured, tested, labeled, packaged, promoted, marketed, distributed, and/or sold by Defendants.

70.     At all times relevant hereto, the Defendants have directly marketed and distributed Avandia to the medical community.

71.     At all times relevant hereto, the Defendants, have directly marketed Avandia to the consuming public throughout the United States, including the Plaintiffs, herein.

72.     At all times relevant hereto, Defendant McKesson distributed Avandia to the consuming public, including the Plaintiffs, herein.

73.     In May 1999, Defendant GSK sought and obtained Food and Drug Administration ("FDA") approval to market a drug manufactured, designed, distributed and sold by Defendants to diabetics purported to increase insulin sensitivity without causing serious effects, harm or injury.

74.     Defendants, as a result of strenuous marketing of said drug Avandia, were able to capture a significant share of the market and generate billions of dollars in income and profit as a consequence.

75.     Defendants have continued to reap substantial profits from said drug, Avandia, from May of 1999 to the present. By at least September 2005, Defendants knew (upon information and belief), but had not disclosed, evidence from studies conducted from 1999 through 2005 that demonstrated adverse cardiac events in consumers attributable to the drug. Although Defendants had an analysis of 42 patient studies of Avandia, it failed to disclose the full results of the study to the FDA, doctors, and patients. The complete results of the study were not provided to the FDA for another year.

76.     During the year 2006, after the time the Defendants were aware of the study

results, Defendants increased their sales of Avandia to a distribution of approximately 13 (thirteen) million prescriptions in the United States. By way of example, in 2006 a one month's supply of Avandia cost between $90 and $200. Thereby, Defendants were able to generate sales of $2.2 billion of this drug in 2006.

77. At all relevant times herein, Avandia was widely advertised by the Defendants as an effective and safe treatment for diabetic patients. Said Defendants minimized the risks posed to diabetic patients by ingestion of Avandia. In August 2006, for the first time and as a result of external pressure, Defendant GSK disclosed results of the study (referenced in paragraph 9 above) even though the Defendants were fully aware of adverse cardiac events due to the drug Avandia by at least September 2005. Said Defendants concealed and minimized the known risks to diabetic patients from ingesting Avandia.

78. In doing so, the Defendants concealed the known risks to diabetic patients and failed to warn of known and/or scientifically knowable dangers and risks associated with ingestion of Avandia.

79. At all relevant times herein, Plaintiffs were prescribed, and ingested Avandia. As set out above, Defendants knew that the product was unsafe for diabetic patients in general, and was capable of causing and did cause adverse cardiac events in exposed patients. In spite of the knowledge of the dangerous characteristics of said drug, and with conscious disregard for the health and safety of the public and of exposed patients who were prescribed and took Avandia, Defendants placed said drug on the market intending it to be sold to and used by diabetic patients, knowing that said use would occur.

80. Defendants continued the sale of Avandia after the preliminary disclosure to the FDA in August 2006. Knowing that its drug caused adverse cardiac events, heart attacks and strokes and that the diabetic patient population was not informed of the dangers, Defendants

19
Complaint for Damages

continued to expand sales of Avandia to existing and new patients.

81.     On May 21, 2007, Dr. Steven Nissen, a prominent cardiologist associated with the Cleveland Clinic, published a study in the New England Journal of Medicine with his analysis of the 42 studies conducted since 1999.  Dr. Nissen's study disclosed the increased risk of congestive heart failure and heart attack by patients taking Avandia, dangers the Defendant, had been aware of since at least 2005 and possibly before, yet Defendants still failed to disclose to patients and their physicians the true dangers of adverse cardiac events caused by ingestion of the drug Avandia.

82.     At all times relevant herein, Defendants failed to provide sufficient warnings and instructions that would have put Plaintiffs and the general public on notice of the dangers and adverse effects caused by ingesting Avandia including, without limitation, risk of heart attack, congestive heart failure, and stroke.

83.     Avandia as designed, manufactured, distributed, sold and/or supplied by Defendants, was defective as marketed, due to inadequate warnings, instructions, labeling and/or inadequate testing in the presence of Defendants' knowledge of lack of cardiovascular safety.

84.     Defendants thereby acted with fraud, malice, oppression and a conscious disregard for Plaintiffs' and the general public's safety.  Plaintiffs accordingly request that the trier of fact, in the exercise of sound discretion, award additional damages for the sake of example and for the purpose of punishing the Defendants for their conduct, in an amount sufficiently large to be an example to others and to deter the Defendants and others from engaging in similar conduct in the future.  The aforesaid wrongful conduct was done with the advance knowledge, authorization, and/or ratification of an officer, director, and/or managing agent of Defendants.

20
Complaint for Damages

## FRAUDULENT CONCEALMENT

85.     Any applicable statute of limitations have been tolled by the knowing and active concealment and denial of facts as alleged herein by the Defendants.  Plaintiffs have been kept in ignorance of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part.  Plaintiffs could not have reasonably discovered the dangerous nature and unreasonable adverse side effects associated with Avandia.

86.     Defendants are and were under a continuing duty to disclose the true character, quality and nature of their drug to Plaintiffs.  Because of their concealment of the true character, quality and nature of their medication, Defendants are estopped from relying on any statute of limitations defense.

### FIRST CAUSE OF ACTION

#### *Strict Products Liability – Design Defect*

87.     Ingesting Plaintiffs hereby incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein and further alleges as to Defendants, Does 1 through 100, and each of them, as follows:

88.     The Avandia manufactured and supplied by Defendants was defective and unsafe for its intended purpose in that the ingestion of Avandia causes serious injuries and/or death. The defect existed in said product at the time it left the possession of the Defendants and each of them. Said product did, in fact, cause personal injuries as described herein while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe, and dangerous for use.

89.     The Avandia manufactured and supplied by Defendants was placed into the stream of commerce by Defendants in a defective and unreasonably dangerous condition in that the foreseeable risks exceeded the benefits associated with the design or formulation.

90.   Alternatively, the Avandia manufactured and supplied by Defendants was defective in design or formulation in that when it was placed in the stream of commerce in that it failed to perform as safely as an ordinary consumer would expect and was more dangerous than other anticoagulant therapies.

91.   The Avandia manufactured and supplied by Defendants was also defective due to inadequate warning or instruction because the Defendants knew or should have known that the product created a serious risk of harm to consumers and Defendants failed to adequately warn consumers of said risks, including Ingesting Plaintiffs.

92.   Defendants, and each of them, knew and intended that Avandia would be used by the ordinary purchaser or user without inspection for defects therein and without knowledge of the hazards involved in such use.

93.   The Avandia manufactured and supplied by Defendants was defective due to inadequate warning and inadequate testing.

94.   The Avandia manufactured and supplied by Defendants was defective due to inadequate post-market warnings and instructions, because Defendants knew or should have known of the risk of serious injury from Avandia, however said Defendants failed to provide adequate warnings to users and consumers of the product, including Ingesting Plaintiffs, and continued to promote the product.

95.   On or before all times relevant to this matter, Defendants, and each of them, were aware that members of the general public, including Ingesting Plaintiffs, who would ingest their product had no knowledge or information indicating that use of their product could cause injury, and said Defendants, and each of them, knew that members of the general public, including Ingesting Plaintiffs, who used their product, would assume, and in fact did assume, that said use was safe, when in fact said use was extremely hazardous to health and human life.

96.    With said knowledge, said Defendants, and each of them, opted to manufacture, design, label, distribute, offer for sale, supply, sell, package, and advertise said product without attempting to protect said product users from, or warn of, the high risk of injury or death resulting from its use.

97.    Rather than attempting to protect users from, or warn them of, the high risk of injury or death resulting from use of their product, Defendants, and each of them, intentionally failed to reveal their knowledge of said risk, failed to warn of said risk and consciously and actively concealed and suppressed said knowledge from members of the general public, including Ingesting Plaintiffs, thus impliedly representing to members of the general public that Avandia was safe for all reasonably foreseeable uses.

98.    The above-referenced conduct of said Defendants, and each of them, was motivated by the financial interest of said Defendants, in the continuing, uninterrupted manufacture, supply, sale, marketing, packaging and advertising of Avandia.

99.    In pursuance of said financial motivation, Defendants, and each of them, consciously disregarded the safety of users of their product and in fact were consciously willing and intended to permit Avandia to cause injury to users and induced persons to purchase and use Avandia, including Plaintiffs herein.

100.    Defendants, their "alternate entities," and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

101.    The herein-described conduct of said Defendants, and each of them, was and is willful, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of the users of their product. Ingesting Plaintiffs, for the sake of example and by way of punishing said defendants, seeks punitive damages according to proof.

23
Complaint for Damages

102.  As a proximate and legal result of the defective and unreasonably dangerous condition of Avandia tested, manufactured and supplied by Defendants, and the lack of adequate use instructions and warnings, Plaintiffs and Plaintiffs' Spouses were caused injury and Plaintiffs were caused to suffer and will continue to suffer the herein described injuries and damages.

103.  WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth.

### SECOND CAUSE OF ACTION

*Strict Products Liability – Manufacturing Defect*

104.  Ingesting Plaintiffs hereby incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein and further allege as to Defendants, Does 1 through 100, and each of them, as follows:

105.  At all times herein mentioned, Defendants' Avandia products were prescribed and used as intended by Defendants and in a manner reasonably foreseeable to Defendants.

106.  The Avandia products were defective at the time of their manufacture, development, production, testing, inspection, endorsement, prescription, sale and distribution, and at the time they left the possession of the Defendants, in that, and not by way of limitation, the products differed from the Defendants' intended result and intended design and specifications, and from other ostensibly identical units of the same product line.

107.  As a proximate and legal result of the defective condition of the Avandia, Plaintiffs were caused to suffer and will continue to suffer the herein described injuries and damages.

108.  WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## THIRD CAUSE OF ACTION

### *Strict Products Liability – Failure to Warn*

109.    Ingesting Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in previous paragraphs of this Complaint as to Defendants, Does 1 through 100, and each of them, as follows:

110.    Defendants manufactured, sold and/or distributed Avandia to Plaintiffs to be used to increase insulin sensitivity without causing serious effects, harm, or injury.

111.    At all times mentioned herein, Avandia was dangerous and presented a substantial danger to diabetic patients and these risks and dangers were known or knowable at the time of manufacture, sale or distribution to Plaintiffs. Ordinary consumers would not have recognized the potential risks and dangers that Avandia posed to cardiac patients because its uses were specifically promoted to improve the health of diabetic patients. Avandia was used in a way reasonably foreseeable to Defendants by Plaintiffs. Defendants failed to provide warnings of such risks and dangers to Plaintiffs as described herein.

112.    As a result of Plaintiffs' ingestion of the defective Avandia, Plaintiffs were caused to suffer the herein described injuries.

113.    In doing the acts herein described, Defendants acted with oppression, fraud and malice, and Plaintiffs are therefore entitled to punitive damages to deter Defendants from engaging in similar conduct in the future. Said wrongful conduct was done with advance knowledge, authorization and/or ratification of an officer, director and/or managing agent of the Defendants.

114.    WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## FOURTH CAUSE OF ACTION

### *Negligence*

115.    Ingesting Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in previous paragraphs of this Complaint as to Defendants, Does 1 through 100, and each of them, as follows:

116.    Defendants and their representatives were manufacturers and/or distributors of Avandia.  At all times herein, Defendants had a duty to properly manufacture, compound, test, inspect, package, label, distribute, market, examine, maintain supply, provide proper warnings, and prepare for use and sell the aforesaid product.

117.    Defendants so negligently and carelessly manufactured, compounded, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine and supplied aforesaid product, that it was dangerous and unsafe for the use and purpose for which it was intended, that is, increasing insulin sensitivity without causing serious injury, harm, or effect to Plaintiffs and others similarly situated.  As a result of the carelessness and negligence of Defendants, Plaintiffs ingested Avandia in the manner intended by the manufacturer and, as a result, Plaintiffs suffered the injuries and damages described herein.

118.    WHEREFORE, Plaintiffs pray for judgment against Defendants, as hereinafter set forth.

### FIFTH CAUSE OF ACTION

### *Breach of Implied Warranty*

119.    Ingesting Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in previous paragraphs of this Complaint as to Defendants, Does 1 through 100, and each of them, as follows:

Complaint for Damages

120. Defendants impliedly warranted that Avandia, which Defendants designed, manufactured, assembled, promoted, sold and distributed to Plaintiffs was merchantable and fit and safe for ordinary use. Defendants further impliedly warranted that Avandia was fit for the particular purpose of increasing insulin sensitivity in diabetic patients without causing serious harm, injury or effect.

121. Ingesting Plaintiffs and their physicians and healthcare providers relied on the skill and judgment of the Defendants in using Avandia.

122. Defendants' Avandia was defective, un-merchantable, and unfit for ordinary use when sold, and unfit for the particular purpose for which they were sold, and subjected Plaintiffs to severe and permanent injuries. Therefore, Defendants breached the implied warranties of merchantability and fitness for a particular purpose when Avandia was sold to Plaintiffs in that Avandia is defective and has failed to increase insulin sensitivity without serious harm in diabetic patients as represented and intended.

123. As a result of Defendants' breach of the implied warranties of merchantability and fitness for a particular purpose, Plaintiffs sustained and/or will continue to sustain the injuries and damages described herein and are therefore entitled to compensatory damages.

124. Defendants now have ample and sufficient notice of breach of said warranty.

125. WHEREFORE, Plaintiffs pray for judgment against Defendants, as hereinafter set forth.

### SIXTH CAUSE OF ACTION

### *Breach of Express Warranty*

126. Ingesting Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in previous paragraphs of this Complaint as to Defendants, Does 1 through 100, and each of them, as follows:

127.  Defendants expressly warranted to Plaintiffs and/or their authorized agents or sales representatives, in publications, and other communications intended for medical patients, and the general public, that Avandia was safe, effective, fit and proper for its intended use.

128.  Plaintiffs and their physicians reasonably relied upon the skill and judgment of Defendants and upon said express warranty in using the aforementioned product. The warranty and representations were untrue in that the product caused severe injury to Plaintiffs. Avandia was unsafe and therefore unsuitable for the use in which it was intended, and caused Plaintiffs to sustain damages and injuries herein alleged.

129.  As soon as the true nature of the product, and the fact that the warranty and representations were false, were ascertained, said Defendants had ample and sufficient notice of the breach of said warranty.

130.  WHEREFORE, Plaintiffs pray for judgment against Defendants, as hereinafter set forth.

## SEVENTH CAUSE OF ACTION

### *Deceit by Concealment – Cal. Civ. Code §§ 1709, 1710*

131.  Ingesting Plaintiffs hereby incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein and further allege as to Defendants, Does 1 through 100, and each of them, as follows:

132.  California Civil Code section 1709 provides that one who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damages which he thereby suffers.

133.  California Civil Code section 1710 provides, in part, that a deceit, within the meaning of section 1709, is the suggestion, as a fact, of that which is not true, by one who does not believe it to be true; the assertion, as a fact, of that which is not true, by one who has no

reasonable ground for believing it to be true; or the suppression of fact, by one who is found to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact.

134.    The Defendants, and each of them, from the time that the Avandia was first tested, studied, researched, evaluated, endorsed, manufactured, marketed and distributed, and up to the present, willfully deceived the Ingesting Plaintiffs, their prescribing physicians and healthcare providers, the medical, scientific, pharmaceutical and healthcare communities, and the public in general, by suggesting to some or all of them untrue facts about their rosiglitazone products that they did not believe to be true or had no reasonable ground for believing them to be true, and by concealing from them the true facts concerning such products, which the Defendants had a duty to disclose.

135.    At the time Avandia was manufactured, distributed, and sold to Ingesting Plaintiffs, the Defendants were in a unique position of knowledge, which was not possessed by Ingesting Plaintiffs, or their physicians, concerning the safety and effectiveness of the drug, and thereby held a position of superiority over Ingesting Plaintiffs, and their physicians.

136.    Through their unique knowledge and expertise regarding the defective nature of Avandia, and through their marketing statements to physicians and patients in advertisements, promotional materials, labels and other communications as herein alleged, Defendants professed to Ingesting Plaintiffs' physicians that they were in possession of facts demonstrating that Avandia was safe and effective for its intended use and was not defective, when in fact they were not, and in fact possessed information they did not disclose that they had a duty to disclose to ensure such physicians were not misled.

137.    Defendants knew or had no reasonable ground to believe the truth of their representations to Ingesting Plaintiffs' physicians. Such representations were made to induce the

purchase of Avandia and/or rosiglitazone, and Ingesting Plaintiffs, and their physicians relied upon those statements when purchasing and administering Avandia.

138. Defendants took unconscionable advantage of their dominant position of knowledge with regard to Ingesting Plaintiffs, and their physicians and engaged in constructive fraud in their relationship.

139. Ingesting Plaintiffs and their physicians reasonably relied on these misrepresentations and misleading facts.

140. The Defendants intentionally concealed and suppressed the true facts concerning the Avandia with the intent to defraud the Ingesting Plaintiffs, their prescribing physicians and healthcare providers, the medical, scientific, pharmaceutical and healthcare communities, and the public in general, in that Defendants knew that the physicians and healthcare providers would not have prescribed the Avandia, and Ingesting Plaintiffs would not have used the Avandia if they had known the true facts concerning the dangers of the Avandia.

141. As a result of the foregoing fraudulent and deceitful conduct by Defendants, and each of them, Ingesting Plaintiffs, for the sake of example and by way of punishing said defendants, seeks punitive damages according to proof.

142. As a result of the foregoing fraudulent and deceitful conduct by Defendants, and each of them, Plaintiffs were caused to suffer and will continue to suffer the herein described injuries and damages.

143. WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## EIGHTH CAUSE OF ACTION

### *Fraud*

144. Ingesting Plaintiffs hereby incorporate by reference, as if fully set forth herein,

30
Complaint for Damages

each and every allegation contained in previous paragraphs of this Complaint as to Defendants, Does 1 through 100, and each of them, as follows:

145. Defendants falsely and fraudulently represented to Plaintiffs, their physicians, and to members of the general public that the aforesaid product was safe, effective, reliable, consistent, and better than other similar products due to its ability to increase insulin sensitivity without causing serious harm when used in the manner intended by the manufacturer. The representations by said Defendants were in fact, false. The true facts include, but are not limited to, the fact that the aforesaid product was not safe to be used and was, in fact, dangerous to the health and bodies of the Plaintiffs.

146. When the Defendants made these representations, they knew that they were false. Defendants made said representations with the intent to defraud and deceive Plaintiffs, and with the intent to induce them to act in the manner herein alleged, that is to use the aforementioned product for increasing insulin sensitivity.

147. At the time Defendants made the aforesaid representations and Plaintiffs and/or defendants took the actions herein alleged, Plaintiffs were ignorant of the falsity of these representations and reasonably believed them to be true. In reliance upon said representations, Plaintiffs were induced to, and did, use the aforementioned product as herein described. If Plaintiffs had known the true material facts and received full disclosure of all dangers associated with Avandia, they would not have taken such action. The reliance of Plaintiffs and their physicians upon Defendants' representations were justified because said representations were made by individuals and entities who appeared to be in a position to know the true facts and all dangers associated with Avandia.

148. As a result of Defendants' fraud and deceit, Plaintiffs were caused to sustain the herein described injuries and damages.

31
Complaint for Damages

149. By engaging in the acts herein alleged, the Defendants acted with oppression, fraud, and malice, and Plaintiffs are therefore entitled to punitive damages to deter Defendants, and others from engaging in similar conduct in the future. Said wrongful conduct was done with advance knowledge, authorization and/or ratification of an officer, director and/or managing agent of each Defendant.

150. WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## NINTH CAUSE OF ACTION

### *Fraud by Concealment*

151. Ingesting Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in previous paragraphs of this Complaint as to Defendants, Does 1 through 100, and each of them, as follows:

152. At all times mentioned herein, Defendants had the duty and obligation to disclose to Plaintiffs and to their physicians the true facts concerning the aforesaid product, Avandia, that is, that said product was dangerous and defective, lacking efficacy for its purported use and lacking safety in normal use, and how likely it was to cause serious consequences to users including serious and permanent injuries to the heart. Defendants made the affirmative representations as set forth above to Plaintiffs and their physicians and the general public prior to the date Avandia was ingested by Plaintiffs while concealing material facts.

153. At all times herein mentioned, Defendants willfully and maliciously concealed facts as set forth above from Plaintiffs and their physicians, and therefore, Plaintiffs, with the intent to defraud as herein alleged.

154. At all times herein mentioned, neither Plaintiffs nor their physicians were aware

of the facts set forth above, and had they been aware of said facts, they would not have acted as they did, that is, would not reasonably relied upon said representations of safety and efficacy and utilized Avandia for increasing insulin sensitivity. Defendants and each of their representations were a substantial factor in Plaintiffs utilizing Avandia for increasing insulin sensitivity.

155. As a result of the concealment of the facts set forth above, sustained injuries as hereinafter set forth.

156. In engaging in the action herein alleged, Defendants acted with oppression, fraud, and malice and Plaintiffs are therefore entitled to punitive damages in an amount reasonably related to Plaintiffs' actual damages, Defendants' wealth, and sufficiently large enough to deter these Defendants and others from engaging in similar conduct in the future.

157. WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## TENTH CAUSE OF ACTION

### *Negligent Misrepresentation*

158. Ingesting Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in previous paragraphs of this Complaint as to Defendants, Does 1 through 100, and each of them, as follows:

159. At all relevant times herein, Defendants represented to Plaintiffs and their physicians that their Avandia was safe to use to increase insulin sensitivity knowing that their Avandia was defective in causing injuries described herein.

160. The Defendants made the aforestated representations with no reasonable ground for believing them to be true when Defendants' own data showed Avandia to be defective and

dangerous when used in the intended manner.

161.    The aforesaid representations were made to the physicians prescribing Avandia prior to the date it was prescribed to Plaintiffs, with the intent that Plaintiffs and their physicians would rely upon such misrepresentations about the safety and efficacy of Avandia.  Plaintiffs and their physicians reasonably relied on such representations that Avandia was safe for use to aid in the treatment of increasing insulin sensitivity.

162.    The representations by Defendants to Plaintiffs were false, and thereby caused Plaintiffs' injuries described herein.

163.    WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth.

### ELEVENTH CAUSE OF ACTION

#### *Loss of Consortium*

164.    Spouse Plaintiffs hereby incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein and further allege as to Defendants, and each of them, as follows:

165.    This cause of action is asserted by the Spouse Plaintiffs identified previously whose spouses suffered personal injuries as a result of using Defendants' Avandia product, who at all times relevant to this action were, and are now, husband and wife.

166.    Subsequent to their injuries, Ingesting Plaintiffs were and are unable to perform the necessary duties as a spouse and the work and service usually performed in the care, maintenance and management of the family home.

167.    Spouse Plaintiffs were unaware the ingesting Plaintiffs' injuries were caused by Avandia until within two years of filing this complaint.

34
Complaint for Damages

168.    By reason of the injuries sustained by their spouses, the Spouse Plaintiffs have been and will continue to be deprived of the loss of love, companionship, comfort, care, assistance, protection, affection, society, and moral support of their spouses, as to their damage, in an amount presently unknown but which will be proved at the time of trial.

WHEREFORE, said Spouse Plaintiffs pray for judgment against Defendants as hereinafter set forth.

### PRAYER FOR RELIEF

WHEREFORE, Ingesting Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1.    For past and future general damages, according to proof;

2.    For past and future medical and incidental expenses, according to proof;

3.    For past and future loss of earnings and/or earning capacity, according to proof;

4.    For future medical monitoring costs, according to proof;

5.    For punitive and exemplary damages in an amount to be determined at trial;

6.    For prejudgment interest on all damages as is allowed by the laws of the State of California;

7.    For costs of suit incurred herein;

8.    For injunctive relief, enjoining Defendants from the acts of unfair competition and untrue and misleading advertising;

9.    For a disgorgement of profits, according to proof.

10.    For such other and further relief as the Court may deem just and proper, including prejudgment interest.

WHEREFORE, Plaintiffs' Spouses pray for judgment against Defendants, and each of them, as follows:

    1.     For plaintiff's damages for loss of consortium and/or society according to proof;

    2.     For past and future costs of suit incurred herein.

DATED: June 26, 2013       NAPOLI BERN RIPKA SHKOLNIK & ASSOCIATES LLP

By: _____

    Marissa Langhoff (CA SBN 272692)
    Hunter J. Shkolnik (NY SBN 2031458, CA Pro Hac Vice Status Pending)
    NAPOLI BERN RIPKA SHKOLNIK & ASSOCIATES LLP
    111 Corporate Drive, Suite 225
    Ladera Ranch, CA  92694
    Telephone:    (949) 234-6032
    Facsimile:    (949) 429-0892
    MLanghoff@napolibern.com
    Hunter@Napolibern.com

    *Attorneys for Plaintiffs*

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury in this action.

DATED: June 26, 2013      NAPOLI BERN RIPKA SHKOLNIK & ASSOCIATES LLP

By:_____
     Marissa Langhoff (CA SBN 272692)
     Hunter J. Shkolnik (NY SBN 2031458, CA Pro Hac Vice
     Status Pending)
     NAPOLI BERN RIPKA SHKOLNIK & ASSOCIATES LLP
     111 Corporate Drive, Suite 225
     Ladera Ranch, CA 92694
     Telephone:      (949) 234-6032
     Facsimile:      (949) 429-0892
     MLanghoff@napolibern.com
     Hunter@Napolibern.com

     *Attorneys for Plaintiffs*

# EXHIBIT B

Case 2:13-cv-05873-CMR Document 1-1 Filed 10/03/13 Page 54 of 82
Case 3:13-cv-03105-SC Document 1-1 Filed 07/09/13 Page 40 of 79
Case 3:12-cv-60092-DRH-SCW   Document 31   Filed 02/22/13   Page 1 of 20   Page ID #486

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **IN RE PRADAXA** | ) | **MDL No. 2385** |
| **(DABIGATRAN ETEXILATE)** | ) | **3:12-md-02385-DRH-SCW** |
| **PRODUCTS LIABILITY** | ) | **Judge David R. Herndon** |
| **LITIGATION** | ) | |

**This Document Relates to:**

THELMA BUTNER, CLIFTON
FITZSIMMONS, JOHN WILCHINSKI,
GEORGE FLETCHER, and PAULINE
ALDRIDGE,

        Plaintiffs,

    vs.

        Case No. 3:12-cv-60092-DRH-SCW

BOEHRINGER INGELHEIM
PHARMACEUTICALS, INC.,
BOEHRINGER INGELHEIM
FREMONT, INC., BOEHRINGER
INGELHEIM PHARMA GmbH & CO.
KG, BOEHRINGER INGELHEIM
INTERNATIONAL GmbH,
BIDACHEM S.P.A., MCKESSON
CORPORATION and DOES 1-100

        Defendants.

## ORDER DISMISSING FRAUDULENTLY JOINED DEFENDANTS AND DENYING REMAND

**Herndon, Chief Judge:**

### I. INTRODUCTION

One of the defendants, Boehringer Ingelheim Pharmaceuticals, Inc. ("BIPI"),

removed this action to federal court on the basis of diversity jurisdiction (Doc. 1).

BIPI contends complete diversity exists because the two nondiverse defendants, Boehringer Ingelheim Fremont, Inc. ("BIF") and McKesson Corporation ("McKesson"), were fraudulently joined. Presently, before the Court is the plaintiffs' motion to remand to state court (Doc. 14). The plaintiffs allege various procedural defects in BIPI's notice of removal and contend they have asserted viable claims against the two nondiverse defendants. *Id.* BIPI filed a responsive pleading on January 2, 2013 (Doc. 27). Thereafter, on January 17, 2013, the plaintiffs filed a reply brief (Doc. 28).[1]

## II. BACKGROUND

The plaintiffs are citizens of California, Tennessee, and Louisiana (Doc. 1 ¶¶ 17-21). On May 23, 2012, the plaintiffs filed a complaint in the Superior Court of the State of California for the County of San Francisco (Doc. 1-1). The plaintiffs' complaint asserts twelve causes of action arising from the alleged ingestion of the prescription drug Pradaxa and names six defendants (Doc. 1-1).[2] McKesson and BIF are both citizens of California and are the only non-diverse defendants.

---

[1] The plaintiffs' reply brief, if any, was due on January 16, 2013 (Doc. 26). On January 17, 2013, the plaintiffs' simultaneously filed a reply brief (Doc. 28) and a motion for extension of time to file (Doc. 29) stating counsel mistakenly believed the reply was due on January 17, 2013. Although the Court has considered the plaintiffs' reply brief, the Court notes it could have stricken the briefing for timeliness and for failure to comply with Local Rule 83.1(f) (the filing attorney did not file a written entry of appearance until February 19, 2013 and only did so after being contacted by the Court, out of courtesy, on two separate occasions). The Court also reminds the plaintiffs that reply briefs are not favored and should be filed only in exceptional circumstances. S.D. Ill. Local Rule 7.1(c). The plaintiffs' reply brief does not state whether exceptional circumstances are present as required under Local Rule 7.1(c). *Id.* The Court may not be so lenient in the future.

[2] The named defendants are Boehringer Ingelheim Pharmaceuticals, Inc. ("BIPI") (a citizen of the States of Delaware and Connecticut), Boehringer Ingelheim Fremont, Inc. (a citizen of the States of Delaware and California), Boehringer Ingelheim Pharma GmbH & Co. KG. (a citizen of the foreign state of Germany), Boehringer Ingelheim International GmbH (a citizen of the foreign state of

On July 16, 2012, after the plaintiffs' complaint was filed in state court but prior to service of process on any defendant, BIPI removed the case to the U.S. District Court for the Northern District of California on the basis of diversity jurisdiction (Doc. 1).[3] In removing the action, BIPI did not obtain the consent of the other named defendants. BIPI's notice of removal states that BIPI did not need to obtain the consent of the other named defendants because, at the time of removal, no defendant had been served (Doc. 1 ¶ 7). In addition, BIPI's notice of removal states it was not required to obtain the consent of BIF or McKesson because both defendants were fraudulently joined. *Id.*

On December 7, 2012, the case was transferred from the Northern District of California to this Multidistrict Litigation pursuant to 28 U.S.C. § 1407. Presently before the Court is the plaintiffs' motion to remand to state court (Doc. 14). The plaintiffs raise several procedural objections regarding BIPI's notice of removal, including the following: (1) the removal is premature because it was filed prior to service on any defendant; (2) the removal is improper because BIPI did not obtain the consent of the other defendants; and (3) the removal violates the fraudulent joinder rule. The plaintiffs also contend that this Court lacks subject matter jurisdiction because they have asserted viable claims against the nondiverse defendants.

---

Germany), Bidachem S.P.A. (a citizen of the foreign state of Italy), McKesson Corporation (a citizen of the States of Delaware and California), and Does 1-100 (Doc. 1 ¶¶ 22-27).

[3] In their motion to remand, the plaintiffs erroneously assert this case was removed by defendants Boehringer Ingelhei Pharmaceuticals, Inc., Boehringer Ingelheim Fremont, Inc., Boehringer Ingelheim Pharma GMBH & Co. KG, Boehringer Ingelheim Pharma GMBH & Co. KG, Boehringer Ingelheim International GMBH, and Bidachem S.P.A. (Doc. 14 p. 1). The notice of removal, however, was filed by BIPI alone (Doc. 1).

### III.  ANALYSIS

A.  Governing Authority

    1. Substantive State Law

       In assessing whether a defendant has been fraudulently joined, a court considers whether the asserted claims have any chance of success under state substantive law. Accordingly, prior to conducting a fraudulent joinder analysis, a court must determine which state's substantive law is applicable. When a diversity case is transferred by the Multidistrict Litigation Panel (as is the case here), the transferee court applies the state laws that the transferor forum would have applied according to that forum's conflict of laws rules.  *See In re Data General Corp. Antitrust Litigation*, 510 F.Supp. 1220, 1227–28 (J.P.M.L. 1979) (*quoting In re Air Crash Disaster at John F. Kennedy International Airport on June 24, 1975*, 407 F.Supp. 244, 246–47 (J.P.M.L.1976)); *Chang v. Baxter Healthcare Corp.*, 599 F.3d 728, 732-735 (7th Cir. 2010); *In re Air Crash Disaster Near Chicago*, 644 F.2d 594, 610 (7th Cir. 1981). [4] Accordingly, in the instant case, the Court would apply California's "governmental interest" approach. [5]  Because this

---

[4]  This parallels the rules governing cases transferred pursuant to 28 U.S.C. § 1404(a). *See  Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 243, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) (transferee court must apply the choice of law rules of the State from which the case was transferred); *Barron v. Ford Motor Co. of Canada Ltd.*, 965 F.2d 195, 197 (7th Cir. 1992) (noting that when a case is transferred on grounds of convenience, the transferee court must apply the conflict of laws rules of the transferor jurisdiction whether the defendant or the plaintiff requested the transfer).

[5]  A district court sitting in California would apply California conflict of laws rules. *See Malone v. Corrections Corp. of Am.*, 553 F.3d 540, 542 (7th Cir. 2009) (A district court sitting in diversity applies the conflict of laws rules of the state in which it sits). California applies a "governmental interest" approach. *Reich v. Purcell*, 67 Cal.2d 551, 554–55, 63 Cal.Rptr. 31, 432 P.2d 727 (Cal. 1967). The objective of this approach is to determine the law that most appropriately applies to the issue involved, considering the interests of the litigants and all states involved. *Reich*, 67 Cal.2d at 555, 63 Cal.Rptr. 31, 432 P.2d 727. In the instant case, the following jurisdictions might

case involves multiple plaintiffs and numerous theories of recovery, the Court would have to apply an individualized choice of law analysis to each plaintiff and each claim to determine which jurisdiction's substantive law governs the same. *See Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1188 (9th Cir. 2001).[6]

### 2. Federal Law

With regard to questions of federal law, the Court is governed by the law of the Seventh Circuit. *See McMasters v. U.S.* 260 F.3d 814, 820 (7th Cir. 2001) (in general, the law of the circuit where the transferee court sits governs questions of federal law). [7] *See also Eckstein v. Balcor Film Investors*, 8 F.3d 1121, 1126 (7th Cir. 1993), cert. denied, 510 U.S. 1073, 114 S.Ct. 883, 127 L.Ed.2d 78 (1994) (law of the transferor forum is only applied when the federal law in question is intended to be geographically non-uniform).

---

have an interest in having their substantive laws applied: Louisiana (only with regard to the claims of the Louisiana citizens); Tennessee (only with regard to the claims of the Tennessee citizens); California (with regard to the claims of the California citizens and, as the forum, with regard to the claims of all plaintiffs). In addition, Delaware, Connecticut, Germany, and Italy are potentially interested jurisdictions.

[6] In the instant case, the plaintiffs assume California substantive law governs all of the plaintiffs' claims (presumably because the case was filed in California). But here, the law of the forum is not necessarily controlling. This is particularly true with respect to those plaintiffs who are citizens of (and were likely injured in) states other than California. *See e.g., Boaz v. Boyle & Co.*, 40 Cal. App. 4th 700, 713 (although the situs of the injury is not controlling, it remains a relevant consideration).

[7] Although the Seventh Circuit has yet to decide which law governs federal claims in cases transferred under 28 U.S.C. § 1407, it has adopted the above rationale when resolving the question under 28 U.S.C. § 1404(a), which authorizes district courts to transfer cases for reasons of convenience. *See McMasters v. U.S.*, 260 F.3d 814, 819 (7th Cir. 2001); *Eckstein v. Balcor Film Investors*, 8 F.3d 1121, 1126 (7th Cir. 1993), *cert. denied*, 510 U.S. 1073, 114 S.Ct. 883, 127 L.Ed.2d 78 (1994).

### 3. District Court Decisions

The Court reminds the parties that district court opinions have no precedential value and are not binding on this court. *See, e.g.*, *Howard v. Wal-Mart Stores, Inc.*, 160 F.3d 358, 359 (7th Cir. 1998); *Malabarba v. Chicago Tribune Co.*, 149 F.3d 690, 697 (7th Cir.1998) little or no authoritative value"). Further, the undersigned judge has specific case management procedures relating to citation of federal trial courts:

> When parties or attorneys feel compelled to cite other federal trial courts as authority for a particular proposition of law, despite the complete lack of precedential authority thereof, the name of the trial judge whose order is cited should be included with the citation. Furthermore, the exact purpose in citing the case should be included since it is presumed that it is not cited as binding precedent on this Court. If a subsequent Seventh Circuit opinion, for example, relies upon the case for a reason pertinent to the action at bar, this Court should be so advised.

Chief Judge David R. Herndon Case Management Procedures, p. 2 (available at http://www.ilsd.uscourts.gov/documents/Herndon.pdf).

### B. Alleged Procedural Deficiencies

#### 1. Timeliness of Removal

The plaintiffs contend that, because the notice of removal was filed prior to the plaintiffs effecting service on *any* of the defendants, it was premature and thus untimely (Doc. 14 p. 11). The Court is not persuaded by this argument. Section 1446(b)(1) merely establishes the deadline or outer limit for filing a notice of removal, after which removal is untimely. *See* 28 U.S.C. § 1446(b)(1)("The notice of removal of a civil action or proceeding *shall be filed within thirty days after*

6

Case 2:13-cv-05870-CMR Document 1-1 Filed 07/09/13 Page 60 of 82
Case 3:13-cv-03100-SC Document 1-1 Filed 06/03/13 Page 60 of 79
Case 3:12-cv-60092-DRH-SCW Document 31 Filed 02/22/13 Page 7 of 20 Page ID #492

*the receipt by the defendant, through service or otherwise*, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based[.]") (emphasis added). Nothing in section 1446(b)(1), or any other statute,[8] indicates that a defendant must formally receive the complaint before removing the case. Given the statute's clarity, it is not the Court's place to impose any such requirement.[9]

### 2. Consent

The plaintiffs argue the removal was defective because BIPI did not obtain the consent of the other defendants (Doc. 14 p. 12). The plaintiffs are correct in noting that the judicially created "rule of unanimity" generally requires all defendants to consent to removal. *See Chicago, Rock Island & Pac. Ry. Co. v. Martin*, 178 U.S. 245, 248, 20 S.Ct. 854, 44 L.Ed. 1055 (1900). Federal courts, however, uniformly recognize that fraudulently joined defendants and unserved defendants are not required to join in the removal.[10]

---

[8] In fact, 28 U.S.C. § 1441 indicates that a complaint need only be filed to be removable. *See* 28 U.S.C. § 1441(a) ("any civil action *brought* in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants") (emphasis added). *See also* 28 U.S.C. § 1448 (diminishing the significance of pre-removal service by providing that service may be completed after removal in cases "in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective").

[9] The plaintiffs cite to a number of cases addressing the significance of service of process in evaluating whether diversity of citizenship exists (Doc. 14 pp. 11-12). These cases relate to the existence of diversity jurisdiction and are not applicable to the plaintiffs' timeliness arguments.

[10] *See e.g. Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 366 (7th Cir. 1993) (overruled on other grounds by *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 540 (7th Cir. 2006) (noting that a party's consent "was not needed" where it was not served until after the filing of the removal petition); *Id.* at 368 ("only indispensable defendants are required to join in the petition for removal; the consent of nominal or formal parties is not necessary"); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n. 1 (9th Cir.1988) (fraudulently joined, unknown, nominal, and unserved defendants need not consent); *Salveson v. W. States Bankcard Ass'n*, 731 F.2d 1423,

Here, none of the defendants had been served at the time of removal. Accordingly, BIPI did not need to obtain the consent of the other defendants. Moreover, for the reasons discussed below, the Court finds McKesson and BIF were fraudulently joined. As a result, BIPI did not need to obtain consent from McKesson or BIF.

### 3. Forum Defendant Rule

#### a. The forum defendant rule does not apply to fraudulently joined defendants

The "forum defendant rule," contained in 28 U.S.C. § 1441(b)(2), provides that a case may not be removed on the basis of diversity jurisdiction where one or more defendants is a citizen of the state in which the action is pending. *See* 28 U.S.C. § 1441(b)(2). In the instant case, the plaintiffs claim the forum defendant rule bars removal because BIF and McKesson are citizens of California, the state in which the action was brought (Doc. 28 pp. 5-7).

BIPI asserts the forum defendant rule is inapplicable because BIF and McKesson were fraudulently joined. The Court agrees. Section 1441(b)(2) provides that an action otherwise removable on diversity grounds "may not be removed if any of the parties in interest *properly* joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2) (emphasis added). Thus, pursuant to the plain language of the statute, removal is only prohibited when a *properly* joined and served resident defendant is present.

---

1429 (9th Cir. 1984), superseded by statute on unrelated grounds, as noted in *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1392 n. 3 (9th Cir. 1988) ("Our circuit rule is that a party not served need not be joined.").

A defendant that has been fraudulently joined to defeat diversity jurisdiction does not meet this requirement.[11] In the instant case, for the reasons discussed below, the Court finds that BIF and McKesson were fraudulently joined. As a result, the forum defendant rule is not applicable.

> b. The requirement of complete diversity must be distinguished from the requirements of removability

The forum defendant rule is not applicable because BIF and McKesson were fraudulently joined. Accordingly, the Court need not resolve the parties' arguments with regard to service of process and the forum defendant rule. Nonetheless, the Court will take a moment to clarify an area of confusion that is evident from the plaintiffs' briefing.

BIPI contends that, even if the forum defendant rule were applicable, the presence of an unserved resident defendant would not bar removal. The plaintiffs insist that service is not a relevant consideration in assessing the propriety of removal under the forum defendant rule.[12] As support for their argument, the plaintiffs rely on a number of decisions in which the defendants attempted to use lack of service as an exception to the requirement of complete *diversity*.[13]

---

[11] This holding is consistent with a fundamental principle of fraudulent joinder, namely that a defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144 (1921).

[12] In fact, the plaintiffs claim that BIPI's interpretation of the forum defendant rule constitutes a "blatant misreading of the statute" that has been rejected by "9th Circuit Courts and courts nationwide as improper gamesmanship by the defense bar" (Doc. 28 p. 5).

[13] (*See* Doc. 14 pp. 11-12) (citing *Jennings-Frey v. NYK Logistics Americas Inc.*, No. 2:10-cv-09737, 2011 WL 642653 (C.D. Cal. Feb. 11, 2011) (not reported) (Nguyen, J) (rejecting argument that citizenship of nondiverse defendant should be disregarded in determining *complete diversity*

Reliance on these decisions demonstrates the plaintiffs are conflating section 1332's *diversity* requirement with the requirements of *removability* under the forum defendant rule. This is problematic because there is a crucial distinction between what is relevant in ascertaining diversity (a jurisdictional question) and what is relevant in ascertaining removability under section 1441(b)(2) (a procedural question). [14]

Section 1332 provides a basis for original subject matter jurisdiction over actions between citizens of different states when the sum or value of the matter in controversy exceeds $ 75,000.   28 U.S.C. § 1332(a). The statute requires complete diversity, meaning "none of the parties on either side of the litigation may be a citizen of a state of which a party on the other side is a citizen." *Howell by Goerdt v. Tribune Entertainment Co.,* 106 F.3d 215, 217 (7th Cir. 1997). If complete diversity exists, there is a jurisdictional basis for removal under 28 U.S.C. § 1441(a).

There is no question that the citizenship of all named defendants,[15] regardless of service, must be considered in determining whether diversity

---

because nondiverse defendant was not served at the time of removal); *Preasesu v. Prudential Ins. Co.,* 591 F.2d 74, 78 (9th Cir. 1979) (holding that the "properly joined and served" language in section 1441(b) does not alter the requirement of complete diversity and concluding that service is immaterial in assessing diversity); *Pecherski v. Gen. Motors Corp.,* 636 F.2d 1156, 1161 (8th Cir. 1981) (holding that section 1441(b) did not expand the removal requirement and stating that in assessing diversity jurisdiction a court "must consider all named defendants, regardless of service.")

[14]  *Holmstrom v. Peterson,* 492 F.3d 833, 838 (7th Cir.2007) (the forum defendant rule is not jurisdictional; it is a procedural impediment to removal).

[15]  There are of course exceptions to this general rule.  Relevant to the instant case is the doctrine of fraudulent joinder which allows a court to disregard the citizenship of any defendants that have

jurisdiction exists.[16] However, the forum defendant rule is a separate, non-jurisdictional inquiry with its own statutory requirements. The vast majority of courts considering those statutory requirements have concluded that, where diversity jurisdiction exists, the presence of an unserved forum defendant does not bar removal.[17] As the undersigned judge has explained in previous decisions:

> nothing in 28 U.S.C. § 1441 [bars] removal in diversity cases when an unserved resident defendant is present. In fact, just the opposite:  as that statute's language clearly provides, if diversity jurisdiction exists, only a "joined *and served*" resident prevents ... removal. Under the statute's plain language, therefore, if a resident defendant is not both joined and served, the forum defendant rule does not apply.

*Massey v. Cassens & Sons, Inc.,* 05-0598-DRH (Feb. 16, 2006 Doc. 58 pp. 5-7) (Herndon, C.J.) (citations removed) (emphasis supplied). *See also Sheffer v. Cottrell, Inc., et al.,* 2009 WL 1231037, *2-*3 (S.D. Ill. Apr. 30, 2009) (Herndon, C.J.).[18]

---

been fraudulently joined.  *Schur v. L.A. Weight Loss Centers, Inc.,* 577 F.3d 752, 763 (7th Cir. 2009).

[16]  *See e.g., Pullman Co. v. Jenkins,* 305 U.S. 534, 59 S. Ct. 347, 83 L. Ed. 334 (1939) (diversity jurisdiction is determined by the citizenship of the parties, regardless of service of process); *N.Y. Life Ins. Co. v. Deshotel,* 142 F.3d 873, 883 (5th Cir. 1998) ("Whenever federal jurisdiction in a removal case depends upon complete diversity, the existence of diversity is determined from the fact of citizenship of the parties named and not from the fact of service."); *Howell by Goerdt v. Tribune Entertainment Co.,* 106 F.3d 215, 217 (7th Cir. 1997) (rejecting contention that, in assessing diversity, court could ignore the citizenship of an unserved defendant); see also 14B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 3723 (4th ed. 2012) ("A party whose presence in the action would destroy diversity must be dropped formally, as a matter of record, to permit removal to federal court. It is insufficient, for example, that service of process simply has not been made on a non-diverse party[.]").

[17]  *See e.g., McCall v. Scott,* 239 F.3d 808, 813 n. 2 (6th Cir.2001) ("Where there is complete diversity of citizenship, ... the inclusion of an unserved resident defendant in the action does not defeat removal under 28 U.S.C. § 1441(b)."); *see also* 14B C. Wright, A. Miller, E. Cooper, Federal Practice and Procedure § 3723, at 341 (4th ed. 2012) (the "joined and served" language found in section 1441(b)(2) implies that, in diversity actions, "a diverse but resident defendant who has not been served may be ignored in determining removability."

[18]  Some courts have carved out a limited exception to the rule that, in diversity cases, section 1441(b)(2) does not bar removal of actions involving an unserved resident defendant. For

Case: 2:13-cv-05873-CMR Document: 1-1 Filed: 07/09/13 Page 65 of 82
Case 3:13-cv-03100-SC Document 1-1 Filed 07/09/13 Page 65 of 75
Case 3:12-cv-60092-DRH-SCW   Document 31   Filed 02/22/13   Page 12 of 20   Page ID #497

Therefore, the forum defendant rule does not bar removal when an unserved resident defendant is present. Moreover, although diversity of citizenship is assessed without regard to service of process, this rule is not applicable in the instant case. Here, BIPI does not contend diversity exists because of lack of service. Rather, BIPI contends diversity exists because the forum defendants were fraudulently joined. Accordingly, the plaintiffs' extensive argumentation regarding service of process and the existence of diversity jurisdiction is not relevant.

C. Fraudulent Joinder

  1. Legal Standard

The doctrine of fraudulent joinder is an exception to section 1332's complete diversity requirement. *See Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992). Pursuant to the fraudulent joinder doctrine, a district court considering removal may "disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 763 (7th Cir. 2009). The doctrine of fraudulent joinder is triggered when a defendant demonstrates that, "after resolving all issues

---

instance, in *Holmstrom v. Harad*, 2005 WL 1950672 (N.D. Ill. Aug. 11, 2005) (Aspen, J.) (relied on by the plaintiffs), the court found that while the presence of an unserved resident defendant normally does not defeat removal, that fact, when coupled with the fact that the removing defendant had not been served, was sufficient to warrant remand. *Holmstrom*, 2005 U.S. Dist. Lexis 16694, at *3-8. The undersigned judge has previously declined to adopt this exception finding it contrary to the plain language of the statute. *See Massey v. Cassens & Sons, Inc.*, 05-0598-DRH (Feb. 16, 2006 Doc. 58 pp. 5-7) (Herndon, C.J.) ("where complete diversity is present...only the presence of a 'joined-and-served' resident defendant defeats removal...The statute contains no proviso, and, given its clarity, it is not the Court's role to insert one.").

Case: 2:13-cv-05873-CMR  Document 1-1  Filed 07/09/13  Page 66 of 79
Case 3:13-cv-03100-SC  Document 1-1  Filed 09/03/13  Page 66 of 79
Case 3:12-cv-60092-DRH-SCW  Document 31  Filed 02/22/13  Page 13 of 20  Page ID #498

of fact and law in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant." *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992); accord, *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 764 (7th Cir. 2009). Put another way, fraudulent joinder exists when a non-diverse defendant is "joined simply to defeat removal, as might be inferred from a demonstration that the claim against that defendant had no possible merit." *Walton v. Bayer Corp.*, 643 F.3d 994, 999 (7th Cir. 2011).

Generally, an evaluation of fraudulent joinder is limited to a review of the allegations in the complaint. However, the Seventh Circuit has held that courts may engage in the limited use of affidavits and similar evidence in assessing relevant jurisdictional facts. *See Faucett v. Ingersoll–Rand Mining & Machinery Co.*, 960 F.2d 653, 655 (7th Cir. 1992). For example, in *Faucett*, the Seventh Circuit held a non-diverse defendant's uncontradicted affidavit, stating the defendant had nothing to do with the allegedly injurious product, established there was no possibility the plaintiff could state a claim against the non-diverse defendant. *Faucett,* 960 F.2d at 654-655.

2.  Causation is a requisite element of the plaintiffs' claims

The gravamen of the plaintiffs' claims is that, as a result of the ingestion of Pradaxa, each plaintiff suffered various physical, economic and emotional injuries (Doc. 1-1 ¶¶ 11-18). Imposition of liability, under any of the plaintiffs' asserted theories of recovery, will require some causal relationship between the defendant's conduct and the plaintiffs' alleged injuries – regardless of which

13

Case: 2:13-cv-05873-CAS Document 1-1 Filed 07/09/13 Page 67 of 79
Case 3:13-cv-03100-SC Document 1-1 Filed 07/09/13 Page 67 of 79

Case 3:12-cv-60092-DRH-SCW   Document 31   Filed 02/22/13   Page 14 of 20   Page ID #499

jurisdiction's substantive law governs the individual claims of each plaintiff.[19]

This concept is aptly described in an ALR annotation on products liability:

> Regardless of the theory which liability is predicated upon, whether negligence, breach of warranty, strict liability in tort, or other grounds, it is obvious that to hold a producer, manufacturer, or seller liable for injury caused by a particular product, there must first be proof that the defendant produced, manufactured, sold, or was in some way responsible for the product.

Products Liability: Necessity and Sufficiency of Identification of Defendant as Manufacturer or Seller of Product Alleged to Have Caused Injury, 51 A.L.R.3d 1344, § 2(a) (footnotes omitted). Thus, in the instant case, absent an allegation that BIF or McKesson was in some way responsible for the allegedly injurious product, the plaintiffs' claims have no chance of success.

---

[19]  Regardless of which jurisdiction's substantive law governs, the plaintiffs must, at a minimum, establish the particular defendant was in some way responsible for the particular product that allegedly harmed the plaintiffs. *See e.g., DiCola v. White Bros. Performance Products, Inc.,* 158 Cal.App. 4th 666, 677, 69 Cal.Rptr.3d 888, 898 (Cal. App. 2008) ("As a general rule, a plaintiff claiming to have been injured by a defective product must prove that the defendant's product, or some instrumentality under the defendant's control, caused his or her injury."); *Sindell v. Abbott Laboratories,* 26 Cal.3d 588, 597–598, 607 P.2d 924, 928, 163 Cal.Rptr. 132, 136 (Cal. 1980) ("as a general rule, the imposition of liability depends upon a showing by the plaintiff that his or her injuries were caused by the act of the defendant or by an instrumentality under the defendant's control.") (internal citations omitted); *Desnoyers v. Wells,* 496 A.2d 237 (Conn. App. 1985) (summary judgment in favor of defendant appropriate where evidence showed that defendant did not manufacture, sell or distribute the allegedly injurious product); *In re Asbestos Litigation,* 911 A.2d 1176, 1208 (Del. Super. 2006) (imposition of liability requires connection between defendant's product and plaintiff's injury); *Aymond v. Texaco, Inc* ., 554 F.2d 206, (C.A. La. 1977) (affirming lower court's directed verdict in favor of manufacturer and noting that manufacturer could not be held liable for worker's injuries where there was no evidence that defective product was manufactured by defendant); *Davis v. Yearwood,* 612 S.W.2d 917 (Tenn. App. 1980) (complaint against all possible manufacturers, sellers, distributors, and the like of all possible products that could have caused plaintiffs' injuries, wherein no specific product or entity was identified, court affirmed dismissal for failure to allege facts showing the moving defendant caused or contributed to plaintiffs' injuries). *See also* Products Liability: Necessity and Sufficiency of Identification of Defendant as Manufacturer or Seller of Product Alleged to Have Caused Injury, 51 A.L.R.3d 1344, § 2(a) (collecting cases).

### 3.  Boilerplate Allegations are not Sufficient

The first paragraph of the plaintiffs' complaint alleges that Pradaxa is "a pharmaceutical product researched, designed formulated, compounded, tested, manufactured, produced, processed, assembled, inspected, distributed, marketed, labeled, promoted, packaged, advertised for sale, prescribed or otherwise placed in the stream of interstate commerce by [all of the named defendants]" (Doc. 1-1 ¶ 1). These generic allegations as to all of the defendants do not establish that McKesson or BIF was, in any way, responsible for the product that allegedly caused the plaintiffs' injuries. The undersigned judge has addressed the inadequacies of such boilerplate allegations on numerous occasions. *See In re Yasmin & YAZ (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2100,  2011 WL 1885408 (S.D. Ill. May 17, 2011) (Herndon, C.J.); *In re Yasmin & YAZ (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2100, 2010 WL 3937414 (S.D. Ill. Oct. 4, 2010) (Herndon, C.J.); *In re Yasmin & YAZ (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2100, 2010 WL 2402926 (S.D. Ill. June 15, 2010) (Herndon, C.J.); *In re Yasmin & YAZ (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2100, 2010 WL 1963202 (S.D. Ill. May 14, 2010) (Herndon, C.J.).

<u>4.  Fraudulent joinder as to BIF</u>

Aside from the generic allegations discussed above, the plaintiffs do not allege that BIF manufactured, sold, distributed, or was in any way responsible for the allegedly injurious product. The only specific allegations with regard to BIF are that BIF is California Corporation with its principal place of business in California and that BIF has "conducted business and derived substantial revenue from within the State of California." (Doc. 1-1 ¶ 22). Additionally, BIPI has submitted the declaration of Ralf Otto, the Vice President, Operations and Site Head for BIF (Doc. 1-2).  In his affidavit, Mr. Otto asserts as follows:

> 5.    [BIF] specializes in the development and manufacturing of biopharmaceuticals, including the development of new biological entities for the treatment of human diseases.
>
> 6.    [BIF] does not design, develop, manufacture, distribute, market, label or sell the drug [Pradaxa].
>
> 7.    [BIF] is a corporation wholly separate and distinct from [BIPI], and [BIF] is not a parent or subsidiary of BIPI.

(Doc. 1-2 ¶¶ 5-7). Other than referencing their boilerplate allegations, the plaintiffs do not dispute any of the statements in Mr. Otto's affidavit.

Based on the allegations in the complaint and the uncontroverted statements in Mr. Otto's affidavit, it is evident that the plaintiffs cannot establish that BIF was in any way connected to the allegedly injurious product. Accordingly, the plaintiffs's claims against BIF have no chance of success in state court.

16

Case 2:13-cv-05873-CMR Document 1-1 Filed 10/03/13 Page 70 of 82
Case 3:13-cv-03100-SC Document 1 Filed 07/09/13 Page 70 of 79
Case 3:12-cv-60092-DRH-SCW   Document 31   Filed 02/22/13   Page 17 of 20   Page ID #502

### 5.  Fraudulent joinder as to McKesson

McKesson is a wholesale distributor of prescription medications that purchases pharmaceuticals for sale to retail pharmacies. The only specific allegations with regard to McKesson are as follows: (1) McKesson is "a pharmaceutical distribution and marketing company organized and existing under the laws of the State of Delaware, with its headquarters [in California]" and (2) McKesson "was in the business of promoting and distributing the pharmaceutical product Pradaxa" (Doc. 1-1 ¶¶ 27-28).

The plaintiffs do not allege that McKesson distributed or supplied the Pradaxa that caused their alleged injuries. As the undersigned judge has explained in other decisions, alleging that McKesson is *a* distributor of Pradaxa is not the same as alleging that McKesson is *the* distributor that supplied the pills ingested by the plaintiffs.  *See e.g., In re Yasmin & YAZ (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2100,  2011 WL 1885408 (S.D. Ill. May 17, 2011) (Herndon, C.J.). Absent such an allegation, there is absolutely no causal link between McKesson and the allegedly injurious product. Accordingly, the Court finds that the plaintiffs' claims as to McKesson have no chance of success under state law.

### D.  Fraudulent Joinder Warrants Dismissal of BIF and McKesson

Resolving all issues of fact and law in favor of the plaintiffs, the Court concludes that the plaintiffs have no chance of establishing a cause of action against McKesson or BIF under substantive state law. Accordingly, the Court

17

Case 2:13-cv-05873-CMR Document 1-1 Filed 09/03/13 Page 71 of 82
Case 3:13-cv-03166-SC Document 11 Filed 07/09/13 Page 76 of 79
Case 3:12-cv-60092-DRH-SCW Document 31 Filed 02/22/13 Page 18 of 20 Page ID #503

concludes that BIF and McKesson have been fraudulently joined. The Court's fraudulent joinder finding warrants dismissal of the fraudulently joined defendants. *See Walton v. Bayer Corp.*, 643 F.3d 994, 999-1001 (7th Cir. 2011) (finding of fraudulent joinder is ground for dismissing defendant from lawsuit).

The Court therefore **DISMISSES** McKessson and BIF.

E. Remand is Denied

In light of the Court's finding that the plaintiff cannot sustain a claim against the nondiverse defendants, there is now complete diversity. The second requirement for jurisdiction is that the amount in controversy must exceed $75,000. The plaintiffs contend that, because the amount in controversy is not expressly alleged, it is "unclear how Defendants can properly allege or establish this crucial element of diversity jurisdiction" (Doc. 14 p. 11 n.1). The Court is not persuaded.

The plaintiffs claim that they suffered "physical, economic and emotional injuries" including the following:

> Plaintiff Thelma Butner: "gastrointestinal bleeding and bleeding ulcers, resulting in the need for four pints of blood and two pints of blood plasma, as well as other permanent injuries, such as general physical weakness and reduction in vision." (Doc. 1-1 ¶ 11)

> Plaintiff Clifton Fitzsimmons: "cerebral and gastrointestinal bleeding, resulting in the need for six pints of blood and one pint of blood plasma." (Doc. 1-1 ¶ 13)

> Plaintiff John Wilchinski: "cerebral bleeding and stroke, resulting in permanent long term injuries and the removal of his right foot." (Doc. 1-1 ¶ 15).

Case 2:13-cv-05876-CMR Document 1-1 Filed 10/09/13 Page 72 of 82
Case 3:13-cv-03100-SC Document 1-1 Filed 09/09/13 Page 29 of 79
Case 3:12-cv-60092-DRH-SCW   Document 31   Filed 02/22/13   Page 19 of 20   Page ID #504

Plaintiff George Fletcher: "gastrointestinal bleeding, resulting in the need for fourteen pints of blood and removal of his lower intestine." (Doc. 1-1 ¶ 17)

Plaintiff Pauline B. Aldridge: "gastrointestinal bleeding and bleeding ulcers, resulting in serious long term injuries." (Doc. 1-1 ¶ 18)

These alleged injuries make it abundantly clear that the plaintiffs are seeking damages in excess of $75,000. *See Walton v. Bayer Corp.*, 643 F.3d 994, 998 (7th Cir. 2011).

Therefore, the Court **FINDS** that it has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 and the plaintiffs' motion to remand is **DENIED**.

## IV. CONCLUSION

For the reasons discussed above, the Court **FINDS** and **ORDERS** as follows:

The nondiverse defendants, Boehringer Ingelheim Fremont, Inc. and McKesson Corporation, were fraudulently joined. Accordingly, Boehringer Ingelheim Fremont, Inc. and McKesson Corporation are **DISMISSED**.

The removal was procedurally proper. Additionally, the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 (the amount in controversy is met and,

in light of the dismissal of the nondiverse defendants, complete diversity exists).

Therefore, the plaintiffs' motion to remand is **DENIED**.

**IT IS SO ORDERED.**

Digitally signed by
David R. Herndon
Date: 2013.02.22
15:53:10 -06'00'

**Chief Judge**                                **Date: February 22, 2013**
**United States District Court**

20

# EXHIBIT C

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| In re REZULIN LITIGATION | CASE NO. CV 03–1647-R(RZx) |
| JACKIE BARLOW; CARMA DEKOVEN; ERNESTINE DELAFONT; ZOE EGGER-MUKARVTZ; and SAMUEL GODBOULDT, | [PROPOSED] ORDER DENYING PLAINTIFFS' MOTION FOR REMAND |
| Plaintiffs, | |
| v. | |
| WARNER-LAMBERT CO.; PFIZER INC.; JERROLD OLEFSKY; McKESSON CORP., et al., | |
| Defendants. | |

Defendants removed this action from state court to this Court alleging diversity jurisdiction. Defendants asserted that Jerrold Olefsky and McKesson Corp., both of whom are California residents, were fraudulently joined. Plaintiffs moved to remand to state court. The motions came on for hearing by the Court on April 21, 2003.

Having considered the motions and other documents in support of and in opposition to the motions, having heard the arguments of counsel, and being fully advised in the matter, the Court denies the motion.

The Court finds that Dr. Jerrold Olefsky ("Dr. Olefsky"), a patent-holder and clinical investigator, owed no legal duty to any of the plaintiffs, and, therefore, there is no possibility that the plaintiffs can prove a cause of action against Dr. Olefsky. Thus, Dr. Olefsky must be disregarded for purposes of determining federal diversity

KAYE SCHOLER LLP

jurisdiction.

The Court further finds that there is no possibility that plaintiffs could prove a cause of action against McKesson, an entity which distributed this FDA-approved medication to pharmacists in California. Pursuant to comment k of the Restatement (Second) of Torts Section 402A and California law following comment k, a distributor of a prescription drug is not subject to strict liability.

Accordingly, this Court has diversity jurisdiction over each of these actions. The motion to remand is denied.

IT IS SO ORDERED.

Dated: April 28, 2003

MANUEL L. REAL

MANUEL L. REAL
UNITED STATES DISTRICT JUDGE

Submitted by:

O'DONNELL & SHAEFFER LLP
633 West Fifth Street, Suite 1700
Los Angeles, California 90071
Telephone: (213) 532-2000
Facsimile: (213) 532-2020

KAYE SCHOLER LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (310) 788-1000
Facsimile: (310) 788-1200

By: _Robert Barnes_
Robert Barnes
Attorneys for Defendants
WARNER-LAMBERT COMPANY and PFIZER INC.

KAYE SCHOLER LLP

Exhibit B Page 19

# EXHIBIT D

**List of Related Cases/Plaintiffs**

**Filed by Napoli Bern Ripka Shkolink & Associates, LLP on June 27, 2013**

1. *Rosalynn Alamailo, et al. v. McKesson Corporation et al.,* Case No. CGC-13-532461, San Francisco Superior Court (approximately 66 Plaintiffs);

2. *Marvin Ashley, et al., v. McKesson Corporation, et al.,* Case No. CGC-13-532455, San Francisco Superior Court (approximately 40 Plaintiffs);

3. *Patricia Boreni, et al., v. McKesson Corporation, et al.,* Case No. CGC-13-532453, San Francisco Superior Court (approximately 50 Plaintiffs);

4. *Steven Brock, et al., v. McKesson Corporation, et al.,* Case No. CGC-13-532467, San Francisco Superior Court (approximately 70 Plaintiffs);

5. *Bobby Butler, et al., v. McKesson Corporation, et al.,* Case No. CGC-13-532447 San Francisco Superior Court, (approximately 44 Plaintiffs);

6. *Margarita Cruz, et al., v. McKesson Corporation, et al.,* Case No. CGC-13-532462, San Francisco Superior Court (approximately 39 Plaintiffs);

7. *Linda Dudley, et al., v. McKesson Corporation, et al.,* Case No. CGC-13532443, San Francisco Superior Court (approximately 48 Plaintiffs);

8. *Connie Emana, et al., v. McKesson Corporation, et al.,* Case No. CGC-13-532466, San Francisco Superior Court (approximately 80 Plaintiffs);

9. *Santiago Flores, et al., v. McKesson Corporation, et al.,* Case No. CGC-13-532459, San Francisco Superior Court (approximately 50 Plaintiffs);

10. *Ronald Fortune, et al. v. McKesson Corporation, et al.,* Case No. CGC-13-532471, San Francisco Superior Court (approximately 70 Plaintiffs);

11. *Gil Hermosillo, et al. v. McKesson Corporation, et al.,* Case No. CGC-13-532470, San Francisco Superior Court (approximately 70 Plaintiffs);

12. *Johnnie Johnson, et al., v. McKesson Corporation, et al.,* Case No. CGC-13-532468, San Francisco Superior Court (approximately 80 Plaintiffs);

13. *Dorothy Jones, et al., v. McKesson Corporation, et al.,* Case No. CGC-13-532456, San Francisco Superior Court (approximately 37 Plaintiffs);

14. *Marie Lueck, et al., v. McKesson Corporation, et al.,* Case No. CGC-13-532440, San Francisco Superior Court (approximately 43 Plaintiffs);

15.     *Shukry Messih, et al., v. McKesson Corporation, et al.,* Case No. CGC-13-532452, San Francisco Superior Court (approximately 37 Plaintiffs);

16.     *Sylvia Muniz, et al., v. McKesson Corporation, et al.,* Case No. CGC-13-532464, San Francisco Superior Court (approximately 70 Plaintiffs);

17.     *Esther Ortiz, et al., v. McKesson Corporation, et al.,* Case No. CGC-13-532454, San Francisco Superior Court (approximately 34 Plaintiffs);

18.     *Eugene Parks, et al., v. McKesson Corporation, et al.,* Case No. CGC-13-532433, San Francisco Superior Court (approximately 38 Plaintiffs);

19.     *Oscar Torres, et al., v. McKesson Corporation, et al.,* Case No. CGC-13-532460, San Francisco Superior Court (approximately 51 Plaintiffs);

20.     *Yaqub Yaqub, et al., v. McKesson Corporation, et al.,* Case No. CGC-13-532469, San Francisco Superior Court (approximately 70 Plaintiffs);

21.     *Manuel Zavala Jr., et al., v. McKesson Corporation, et al.,* Case No. CGC-13-532463, San Francisco Superior Court (approximately 51 Plaintiffs).

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

LINDA DUDLEY, ALESIA DIGGS, DARLENE BRACEY, JOE BRADFORD (See Attachment for Additional Names)

**DEFENDANTS**

McKESSON CORPORATION, a corporation, SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, and DOES 1 THROUGH 100, Inclusive

**(b)** County of Residence of First Listed Plaintiff Unknown
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

NAPOLI BERN RIPKA SHKOLNIK & ASSOCIATES LLP
111 Corporate Drive, Suite 225
Ladera Ranch, CA 92694
Telephone: (949) 234-6032

Attorneys *(If Known)*
Michael K. Brown (SBN 104252); (T) 213.457.8000
Sonja S. Weissman (SBN 154320); Steven J. Boranian (SBN 174183)
REED SMITH LLP
355 South Grand Avenue, Suite 2900, Los Angeles, CA 90071

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question *(U.S. Government Not a Party)*
☐ 2 U.S. Government Defendant
☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☒ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 367 Health Care/ Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332; 28 U.S.C. § 1441
Brief description of cause:
Personal injury/product liability action based on alleged injuries sustained from use of pharmaceutical product

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
**DEMAND $** 0.00
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions:)*
JUDGE _____ DOCKET NUMBER _____

## IX. DIVISIONAL ASSIGNMENT (Civil L.R. 3-2)
*(Place an "X" in One Box Only)*
(X) SAN FRANCISCO/OAKLAND  ( ) SAN JOSE  ( ) EUREKA

DATE July 9, 2013

SIGNATURE OF ATTORNEY OF RECORD
*Michael K. Brown (kc)*

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I. (a)**    **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**    **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**    **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**    **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**    **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**    **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

**VI.**    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

Attachment 1 Civil Cover Sheet *Dudley et. al. v. McKesson Corporation et al*. Removal from Superior Court County of San Francisco Case No. CGC-13-532443

Additional Plaintiffs:

ALLAN BRADY, BILLY BROWN. DAVID BROWN, ANTHONY BYRD, VICKIE CAGLE, NICHOLAS COLEMAN, PEGGY CONSTANCE, SUZANNE COOPER, WILLIAM CRENSHAW, SHIRLEY CRUM, CARMEN CRUZ, TIMOTHY DAVIS, DELORES DEGRAFFENRIED, ARTHURENE EUBANKS, RON EVANS, DANNY FARRINGTON, JACQUELINE FOSTER, KINNEY FULLER, MICHAEL GAMAREL, GWENDOLYN GEIGER, MARK GEORGE, ABELL GORE, HAROLD GREEN. TERESA GRIFFIN, WILLIE GRIGGS, WILLIAM HALL, CHARLENE HOWARD, CHRISTOPHER INGRAM, JESSIE JENKINS, JIMMY JIMENEZ, DELMAR JONES, LARRY LECHAN, JAMES LONGWELL, FRANCIS LONO, TOWADA LUNDY, BARBARA MARSH, ALINDA MCCULLUM, AARON MCFADDEN, SUZANNE MCPHEARSON, LINDA MILSTID, JEFFREY MIREK, JOHN MITCHELL, JOAN MOORE, and URI NEUMAN